## RAY VS. LIGHT.

| 34 | 421 |
| 63 | 278 |

| 34 | 421 |
| f85 | 495 |

1. INSTRUCTIONS: *Error in, when waived.*

When error in giving or refusing instructions is not made ground for new trial, it is waived.

2. EXECUTION SALE· *Purchaser of safe is not, of contents.*

The purchaser of a safe at an execution sale, acquires no title to its contents. It is his duty to preserve them and restore them to the owner when called for.

3. TROVER: *Conversion, what it is.* ·

A conversion, in the sense of the law, of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff's rights, or in withholding the possession from the plaintiff, under a claim of title inconsistent with his.

4. SAME: *Conversion—demand and refusal.*

Proof of demand and refusal, or non-compliance, is *prima facie* evidence of conversion.

5. SAME: *Demand too large.*

When the demand is for several articles, only some of which the plaintiff is entitled to, a general refusal, without offering to deliver those he is entitled to, will be evidence of conversion of them.

6. TROVER: *Measure of damages for chose in action, etc.*

The measure of damages in trover for a chose in action, as a bond, bill, note, or other security for payment of money, is *prima facie*, the amount due on the security; the defendant being at liberty to reduce that valuation by proof of payment, or the insolvency of the maker, or of any fact tending to invalidate the security.

7. SAME: *Conversion, joint and several.*

In trover, as in other actions of tort, one or more of the defendants may be found guilty and the others acquitted. But the plaintiff can not recover against all, unless he prove a joint conversion by all.

APPEAL from *Jefferson* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*M. L. Jones,* for appellant.

ENGLISH, C. J. This was a Code action, in the circuit court of Jefferson county, in the nature of the common law action of trover for the conversion of goods. The suit was commenced, twenty-sixth of April, 1876, by George S. Light against Abraham Ray, David Young and Elizabeth Kite. A schedule of the goods, consisting of numerous articles, was attached to and made part of the complaint.

No question is presented on this appeal as to the form or substance of the complaint or answers.

Henry W. Scull, upon his own motion, was made defendant, and claimed the property described in the first seven items of the schedule attached to the complaint, consisting of drawers, cases, counters, tables, shelving, etc.; and called drug-store fixtures.

In the schedule, among others, were also the following items:

| | | |
|---|---|---:|
| 1 gold breastpin and finger-ring (in safe) | ............ | $ 15 00 |
| 1 lot of county scrip | " ............ | 399 10 |
| 5 years' interest on same | " ............ | 119 11 |
| 1 lot county bonds | " ............ | 266 00 |
| 1 year's interest on same | " ............ | 15 96 |

The jury returned a verdict in favor of defendants, Young and Kite, and they were discharged.

The following verdict was rendered against defendant Ray:

" We, the jury, find for plaintiff, etc., against A. Ray, for value of county scrip and county bonds and interest, as set forth in the complaint, being, in amount, $800.27, at the rate of sixty-five cents on the dollar, being of the value of $520.17, and interest on same from date of complaint, one year and eight months, at six per cent., $52.01 ; also, for one gold ring and breastpin, $15 ; interest on same for

Ray vs. Light.

one year and eight months, at six per cent., $1.35 : Total, $588.53."

The jury also returned a verdict against defendant Scull for the value of the property claimed by him, part of which the plaintiff remitted, and he filed no motion for a new trial, and took no bill of exceptions.

Ray filed a motion for a new trial on the grounds following:

1. Verdict as to him, contrary to the evidence.

2. Contrary to law, as given by the court.

3. Contrary to the law and the evidence.

4. Verdict not supported by any evidence as to the value of the county scrip and county bonds, mentioned in plaintiff's complaint.

The court overruled the motion for a new trial; the plaintiff remitted so much of the verdict against Ray as was in excess of $330.75, for which final judgment was entered, and Ray took a bill of exceptions, and appealed.

I. On the trial, appellee moved a number of instructions, some of which were given by the court, and others refused. For appellant, twelve instructions were asked, and all given, except the seventh and ninth.

Counsel for appellant submits that the court erred in refusing these two instructions, and also in giving the fourth and seventh moved for appellee.

Error in giving or refusing instructions was not made ground of the motion for a new trial, and, therefore, by a familiar rule of practice, was waived, if any occurred.

II. Counsel for appellant also insists that there was no evidence that he converted the county scrip, bonds and jewelry; and (III) that the value of the scrip and bonds was not proved; that the jury fixed their value arbitrarily.

The substance of so much of the evidence introduced

upon the trial, and set out in the bill of exceptions, as relates to the conversion of this property, by appellant, and its value, may be here stated :

George S. Light, appellee, testified that he left Pine Bluff in June, 1875, where, at that time, he was carrying on a drug and fancy store business. He left a safe in his store, and in the safe the county scrip, county bonds, and gold breastpin and finger-ring mentioned in the schedule attached to the complaint. The amount of the scrip was as stated in the schedule. The breastpin and finger-ring were worth $15. Here his counsel held up the schedule, and asked him what was the value of the property scheduled? He replied that it was worth the amount stated in the schedule; that the total value was between $1,600 and $1,800.

(It may be here remarked that the value of each article, or class of articles, put down in the schedule is stated in the margin, and the whole footed up at $1,754.67.)

Witness then proved specifically the value of the first seven articles in the schedule, and of all other articles except the coffin and the county scrip and county bonds.

Witness returned to Pine Bluff in February, 1876, and found Young and Kite in possession of the store-house and of the goods in the schedule, except a few articles; they did not have the county scrip and county bonds, nor the breastpin and finger-ring. He made a demand of them for the articles in the schedule by reading the whole list over, and demanding the same. At another time and place, and before suit, he demanded the same articles of Abraham Ray (appellant), by reading the whole of the schedule over to him, and demanding the same; no specific article was demanded.

It was admitted on the trial that Ray, on the first of Jan-

uary, 1876, had purchased under execution issued against George S. Light (appellee), on a judgment in favor of Joseph Merrill, the stock of drugs and the safe, and certain other articles of merchandise, all of which, except the safe, Ray afterwards sold to Young and Kite, who took possession of the store-house, and the goods and chattels so purchased from Ray.

It was also admitted that the suit was not intended to embrace any of the property purchased by Ray under the execution.

A list of the property purchased by Ray under the execution was attached to the return of the sheriff upon the writ, and was read in evidence.

In the list is a safe appraised at $35, but no county scrip, county bonds, gold breastpin or finger-ring.

A. T. Seymour, witness for appellee, testified that after Ray purchased the stock of goods, etc., at the execution sale, he requested witness to take charge of them for him and take care of them, which he did; that, after he took charge of them, Ray sold the safe to some one, and before the safe was delivered, witness opened it and found in it a lot of county bonds and county scrip.

Here witness gave a list of the county bonds and scrip, which is copied in the bill of exceptions. The amount of each piece of scrip and bond is put down in figures, and the whole footed up at $434.50.

Witness further stated that he also found in the safe a finger-ring and breastpin; that he delivered the county scrip and bonds to Ray. He did not deliver him the breastpin and ring, but kept them in his possession, and still had them. Ray never claimed to own them, and never claimed possession of them. Afterwards, about the last of January, 1876, Ray sold out the drugs and other articles to

Young and Kite, and witness gave up his charge to them. He took possession of all the goods in the safe, as the agent of Ray.

Abraham Ray (appellant) testified that on the first of January, 1876, he bought the stock of drugs at the execution sale, and thought at the time he was buying everything in the house. Among other property, he bought the safe in which was the bonds and scrip. After purchasing and taking possession of the goods, he put A. T. Seymour in charge of them as his agent. About the twenty-eighth of January, 1876, he sold out all the stock he had purchased to Young and Kite except the safe, which he had previously sold to another person. Before he sold and delivered the safe, Seymour opened it, and found the scrip and bonds, and delivered them to him, telling him he had gotten them out of the safe. He did not know what was in the safe. When the scrip and bonds were delivered to him by Seymour he took them and deposited them in the bank of Smart, Hudson & Co., in his own name, to remain until the question could be decided who they belonged to, and they were there yet. Several days before the suit was brought, appellee and his attorney, in the presence of two other persons, came and read over to him the schedule of goods attached to the complaint, and demanded possession of all the goods in the list in bulk. No demand was made of him for any specific article in said list. When the demand was made, he replied that he knew nothing about the matter, and referred them to his attorney. At the time of the demand, he had nothing in his possession but the scrip and bonds. He never claimed ownership of the ring and breast-pin, or right to the possession of them. When he purchased the goods under execution, he thought he was buying the contents of the safe with the safe.

II. That appellee had title to the scrip, bonds and jewelry in controversy on this appeal, does not, upon the evidence adduced at the trial, admit of doubt. Counsel for appellant concedes that by his purchase of the safe at the execution sale, he acquired no title to the contents of the safe. There is no evidence that the sheriff opened the safe levied upon, and sold its contents, if he might have done so. *Allen on Sheriffs, p. 110.*

After appellant purchased the safe, he put Seymour, as his agent, in charge of it, who opened it, and found in it the scrip, bonds and jewelry. It seems that appellee was absent when appellant purchased the safe, and when it was opened by his agent. It was the duty of appellant to take care of this property, and restore it to appellee, its owner, when called for.

A conversion in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's rights, or in withholding the possession from the plaintiff, under a claim of title, inconsistent with his own. It may, therefore, be either direct or constructive, and, of course, is proved either directly or by inference. *2 Greenlf. Ev., sec. 642.*

Proof of demand and refusal, or non-compliance, is *prima facie* evidence of conversion. *Ib., sec. 644; Zachary v. Pace, 9 Ark., 212.*

What response appellant made to appellee, when he read over to him the list of articles contained in the schedule attached to the complaint, appellee did not state in his testimony. But appellant stated in his testimony, that when the demand was made, he replied that he knew nothing

about the matter, and referred them (appellee and his attorney) to his attorney.

It appears that before the demand was made, he had deposited the scrip and bonds in bank, in his own name, and they were there subject to his control when the demand was made, and the breastpin and ring were in possession of his agent, who had opened the safe, and taken them out of it, by authority from him, and they were likewise, of course, subject to his control, in the hands of his agent.

Saying, under such circumstances, that he knew nothing about the matter, and referring appellee to his attorney, whom appellee was under no obligation to consult, was equivalent to a refusal to deliver the goods, and some evidence of conversion.

The fact that appellant thought that when he bought the safe at the execution sale, he purchased also its contents, was no valid excuse for his refusal, in effect, to deliver its contents to appellee, when demanded. His claim to the contents of the safe was neither reasonable nor well founded. *Zachary v. Pace, 9 Ark., 216.* One, purchasing a house under execution, might as well claim its contents, no matter how valuable; and make such groundless claim an excuse for refusing to surrender possession of goods, found in the house, on demand of the owner.

Counsel for appellant submits that his refusal to deliver the goods in controversy on this appeal, upon a demand of all the articles in the schedule, was no evidence of conversion; citing *2 Saunders' Rep., p. 47, K, notes (t).* So much of the note as bears upon the point made, is as follows:

The demand, in order to make the refusal evidence of a conversion, must be specific.   *   *   *   So, where the plaintiff, being entitled to the five best beasts as heriots, marked seven beasts, claiming all as heriots, and left them

in the possession of the defendant, who was the owner up
to the marking; and the plaintiff afterwards applied to
the defendant, who still had possession of the seven, for
the beasts generally, but the defendant refused to give
them up, without qualifying his refusal; it was held, no
conversion of the beasts, the demand having reference to a
seizure of seven, and it not being ascertained that any five
were legally chosen. * * * "If the demand be too
large, as where the plaintiff, being entitled to five beasts,
claims seven, and the defendant refuses the seven, but
offers to give up five, and the plaintiff persists in demand-
ing the seven, and declines the five, the demand is wrong,
and the refusal justifiable.' But if the defendant refuse on
the ground that the plaintiff has no right to any one of
the beasts, it should seem that such refusal is evidence of a
conversion, as to the five, to which he is really entitled."
*1 Q. B., 781.* "So, where the plaintiff, being entitled to
certain wooden sash frames, in which were fixed some iron
pulleys, belonging to the defendant, demanded the sash
frames, and the defendant gave an unqualified refusal to
deliver them up, it was held, that such demand and refusal
was a sufficient evidence of a conversion of the sash frames;
though it might have been otherwise if the refusal had
been a qualified one, on the grounds that the pulleys were
attached to the frames."

On the facts of this case, the note from Sanders does not
sustain the point made by counsel for appellant.

Appellee made a schedule of the goods which he claimed
as not having been sold under the execution, in which
were put down the scrip, bonds, breastpin and ring, which
were in his safe when it was purchased by appellant.

He read over the whole list of articles to appellant, and
demanded them of him. The fact that appellant was not

in possession of some of the goods in the list, was no valid excuse for his refusal to deliver such as were in his possession, or under his control. He did not put his refusal on the ground that the demand was too large, but replied that he knew nothing about the matter, and referred appellee to his attorney; and the reply, in point of fact, was not true; for he knew, at the time, that he had deposited the scrip and bonds in bank, in his own name, and that the breastpin and ring were in possession of his agent.

In *Breese v. Bange, 2d E. D. Smith, C. P. New York R., 475,* where, as the foundation of an action in the nature of trover, demand was made of numerous articles scheduled, which, at the time, were in remote places; and the defendant, after stating that he was unwilling to do any thing in the matter until he could consider of the matter, requested a copy of an inventory of the articles, which was thereupon promised, but was never furnished before suit, it was held that the demand and refusal were insufficient as evidence of a conversion.

In this case, appellant requested no copy of the list of the articles demanded, and none was promised.

III. It is true that there was no evidence of the actual or market value of the scrip and bonds.

Where the property sued for in trover is a chose in action—as a bill, note, bond, or other security for the payment of money—it seems that the measure of damages is *prima facie* the amount due on the security, the defendant being at liberty to reduce that valuation by evidence showing payment, the insolvency of the maker, or any fact tending to invalidate the security. *Sedgwick on the Measure of Damages, 6th ed., p. 609, and notes.*

The amount of the scrip and bonds, with the interest due upon them at the time of the demand, was stated in

the schedule. If the jury believed the testimony of appellee, they might have rendered their verdict for that amount, in the absence of any evidence that the scrip and bonds were depreciated. ·

Without evidence, and perhaps from personal knowledge, the jury found that they were worth sixty-five cents on the dollar—which was an error in favor of appellant.

The witness Seymour stated, in effect, that the scrip and bonds, taken from the safe by him, amounted to $434.50. He said nothing as to interest due.upon them. If he had been the only witness, the jury could not have found the value of the scrip and bonds to have been greater than the sum stated by him.

It was within the power of appellant to produce the bonds, and show their face value, the interest due upon them, and to prove their market value. This he failed to do.

Appellee remitted so much of the verdict as was in excess of $330.75.

IV. It is further submitted for appellant that the complaint having charged a joint conversion of the goods by him, Young and Kite, appellee was obliged to prove a joint conversion as alleged, or fail in the action as to all of the defendants. The point is not well taken.

In trover, as in other actions of tort, one or more defendants may be found guilty and the rest acquitted. But . the plaintiff can not recover against all, unless he prove a joint conversion by all. *Starkie on Evidence, vol. 2, part 2, p. 1164; 2 Sanders R., p. 475, note (i).*

V. It is furthermore submitted for appellant that the scrip and bonds were in the custody of the law at the time the demand was made, and that therefore appellee could not maintain the action.

There was an attempt to prove, on the part of the defense, that the scrip and bonds were attached in the hands of the bankers, with whom they were deposited by appellant, at the suit of Scull; but the return of the sheriff upon the writ of attachment, introduced in evidence, fails to show that fact. Some money of appellee's, in the hands of the bankers, it seems, was attached, but released by order of the court on account of defective execution of the writ.

Upon the whole case, we think there was some evidence to support the verdict, and the judgment must be affirmed.