## GANS v. HOLLAND, ADM'R. ETC.

37   483
90   134

1. PRACTICE: *Transcript from Circuit Court on second appeal.*
   On a second appeal to this Court it is not necessary that the transcript contain any of the proceedings previous to the first appeal. They are already here upon the former transcript, and the Court takes notice of them.

2. SALE: *Delivery; what sufficient.*
   In a contract for the sale and delivery of cotton, it is not always necessary that the cotton be weighed and the exact number of pounds be set apart, to make a transfer of title. Any agreement to receive on one side, and abandon control on the other, will be sufficient.

APPEAL from *White* Circuit Court.
Hon. J. N. CYPERT Circuit Judge.

### STATEMENT.

This suit was originally brought in the Probate Court of White County, in 1867, by Gans against Gist, as administrator of Thomas, on the following instrument:

"STONY POINT, April 25, 1862.
"$895 25.

"Due Leon Gans, eight hundred and ninety-five and 25–100 dollars borrowed money and payment for a mule, for which I promise to deliver cotton at Des Arc, at eight cents per pound, when called on.  JOHN F. THOMAS."

The case went to the Circuit Court, on appeal of Gans, and from there to this court, on appeal of the administrator. The principal defense of the administrator was a special plea of *non est factum*, that the words "when called on" were fraudulently added to the instrument by Gans, or his procurement, after it was executed by Thomas, and without his knowledge or consent. Here it was reversed

and remanded, (See *Gist, Adm'r, v. Gans*, 30 *Ark.*, 285,) and on its return to the Circuit Court, further pleading and proceedings were had, as set forth in the opinion, resulting in verdict and judgment for the administrator, and appeal by Gans to this court.

*W. R. Coody* for appellant:

If a party elects to plead in Probate Court, he is bound by all the rules of pleading. *Bellows v. Cheek*, 20 *Ark.*, 424.

Appellant states positively that the note was not altered by him, or by his procurement, and there was no evidence which even tends to overthrow his evidence. *Reed v. Sothern*, 20 *Ark.*, 454; *Rose's Digest, p.* 559–60

As to what is *delivery*, see *Story on Sales, Sec.* 305 to 310; *Benjamin on Sales*, 221 to 240; 9 *Ark.*, 365; 25 *Ib.*, 545; 23 *Ib.*, 244; 19 *Ib.*, 567; 24 *Ib.*, 545; 21 *Ib.*, 563, 30 *Ib.*, 505; 4 *Ib.*, 450.

The third instruction for defendant was erroneous, because it left the jury to decide a matter of law. *Bertrand v. Byrd*, 5 *Ark.*, 651; 11 *Ark.*, 139; 16 *Ark.*, 569.

The fourth is also erroneous. *Buzzell v. Booker*, 16 *Ark.*, 309.

A contract to sell and deliver cotton is not performed, when the weight and value have not been ascertained. *Storey on Sales Sec.* 296, and authorities: *Dennis v. Alexander*, 3 *Barr. Rep.* 50, must be *weighed* with the concurrence or *acquiescence* of the vendee. 25 *Ark.*, 337; 23 *Ark.*, 245.

A tender must be of the exact amount, and made at the *time* and *place* agreed upon. 4 *Ark.*, 450; 30 *Ib.*, 505; *Benj. on Sales*, 528–9.

*J. M. Moore*, for appellee.

A case reversed here, upon return to the Circuit Court,

stands precisely as if that Court had never tried it at all. *Harrison* v. *Trader and Wife*, 29 *Ark.*, 85.

This Court will presume, in the absence of omitted evidence, that the verdict was right. *Taylor* v. *Spears*, 8 *Ark.*, 429 ; *Mitchell* v. *Bird*, 7 *Ark.*, 408.

A delivery need not be to a vendee in person, but may be to an authorized agent. *Crumbacker* v. *Tucker*, 9 *Ark.*, 371. The cases cited by attorney for appellant as to delivery and weighing are not applicable.

As to weighing and delivery, see *Kaufman* v. *Stone*, 25 *Ark.*, 336 ; *Burr* v. *Williams*, 23 *Ark.*, 244 ; *Means* v. *Williamson*, 37 *Maine*, 556 ; *Henning* v. *Powell*, 33 *Mo.* ; *Williams* v. *Adams*, 3 *Sneed*, 359 ; *Bradford* v. *Marbury*, 12 *Ala.*, 520.

Separation and actual setting apart not necessary, when facts show an executed contract and intention to transfer the property to buyer. *Russell* v. *Carrington*, 42 *N. Y.*, 118 ; 19 *N. Y.*, 330 ; 14 *Allen*, 376 ; 2 *Gray*, 195.

The delivery of too much cotton was no cause of complaint, and was not objected to by appellant.

### OPINION.

EAKIN, J. This is the same cause which was before the Court under the style of *Gist, Adm'r* v. *Gans*, reported in 30 *Ark.*, 285. Upon this appeal, the transcript only of subsequent proceedings in the Court below, is brought up ; but the former transcript is still before us, and the Court takes notice of its contents.

1. PRACTICE: Transcript on second appeal.

Upon the return of the cause to the White Circuit Court, the defendant, Gist, for a *further* defense, pleaded that on a day in the year 1862, " after the making of said contract in its original form," his intestate, Thomas, had performed the obligation by delivering to plaintiff, at the town of

Des Arc, the full amount of cotton.    Gist was afterwards discharged from the administration, and Holland, as administrator *de bonis non*, substituted as defendant.

The cause was submitted to a jury upon the issues made, and a verdict was found for defendant. A motion for a new trial was overruled, and judgment accordingly—from which plaintiff appealed.

The note had been duly verified by affidavit and presented to the Probate Court, in the beginning. It was again introduced in evidence.

The plaintiff testified that no alteration had been made in the note, which was in his own handwriting. He explained its appearance by saying that "there was a difference in the color of the ink in the words 'when called on,' and the 'l' in the word April; and accounted for it by saying, that often, whilst writing, he would be interrupted and called away; and, when he would return to his desk, would take up a different pen to finish the writing upon which he had been engaged." He did not swear that it had happened in this particular instance, but that it might have happened. He denied, positively, that he had altered the note, or procured it to be done. He denied that he had ever received any part of the cotton, by himself or by agent.

Gist, the former administrator, testified that, in the Spring of 1862, at the request of Thomas, he went to Des Arc, with some cotton for Gans, which he deposited at the warehouse of "the Stewarts," which was a general depository of cotton, but did not remember stating for whom the cotton was left. It was not weighed. He says that other loads of cotton were carried to Des Arc, although he, himself, accompanied only one. Bales weighed, ordinarily, 450 to 500 lbs.

With regard to the alteration of the note, his memory, he says, is distinct; that when he saw it in 1867, the ink of

the words, "when called on," was fresher in appearance than now. It seemed brighter then, and the difference between those words and others in the instrument was greater.

Duncan Jackson testified that, in the year 1862, Gans told him he had to go to Des Arc to see about his "Thomas cotton," and other business, and requested witness to see to his business until his return. He went, and, on his return, made no complaint about not getting the cotton; made no mention of it at all. Never heard him speak of it again until about three weeks before the trial. He then said he had never received it—that it was burned, and that the whole thing was lost (using quite emphatic language) with the Confederacy. This witness testified, also, as to the difference in the writing in the instrument, and made the same explanation as that made by Gans, as to how it might probably have happened.

Washington Jackson testified that, in 1862, he hauled four or five loads of Thomas' cotton to Des Arc, taking six bales at a load—with one of which Gist went. The cotton was delivered to the person in charge of Stewart's warehouse, who seemed to understand for whom it was intended.

This, with the original note, which was submitted to the inspection of the jury, constitute, substantially, all the testimony.

When this case was formerly before this court, the insertion of the words "when called on," was treated as material, and such as would vitiate the note, or contract, if unauthorized. It has been so treated by the court and counsel in the further progress of the case, and may be considered the law of the case, without further discussion.

It will be found most convenient to take up *seriatim* the grounds of the motion for a new trial. The first is the refusal of the first instruction asked by plaintiff. It does not appear that this instruction was supported by evidence,

and as its refusal.is not urged by counsel as matter of com-
plaint, it may be passed *sub silentio*.  The court did, very
fairly, instruct the jury, on plaintiff's behalf, that the
writing sued on was a valid contract, unless they should
find that it had been altered by plaintiff, or some person for
him, after its execution ; and that, in determining whether
or not such alteration had been made, they might be gov-
erned by an inspection of the note, in connection with all
of the evidence bearing on the question ; and, further, that
if they found the words "when called on " were written
before the execution of the instrument, it would be binding.
On the question of payment, the jury, on plaintiff's request,
were instructed that, before finding for defendant, they
must find that the cotton was delivered to the plaintiff or
his agent at Des Arc ; or that there had been an offer to
make such delivery.  By these two instructions, the plain-
tiff's case was fairly presented. .

The first instruction complained of, for defendant, as
given by the court, is this :  That if the jury, from the
appearance of the note, or other evidence, find on it a sus-
picious alteration, they should find for the defendant, unless
they should find, also, that the alteration was made with the
knowledge and consent of the maker.

Confining this instruction to *material* alterations, as
intended (and there was no question of any other), it does
not appear at all inconsistent with the principle laid down
by this court, when the case was here before.  Of course,
it is left to the jury to determine, first, what is " sus-
picious "—and it is not every erasure or interlineation which
will be.  The jurors bring their common sense, and expe-
rience of daily affairs, and their knowledge of the ordinary
habits of mankind, to bear upon all such considerations, and
are generally shrewd enough to detect, at once, any circum-
stances of suspicion, as distinct from the ordinary clerical

mistakes, and corrections, of unskilled draughtsmen. The rule in this instruction is laid down, substantially, as it was in the case of *Huntingdon et al.* v. *Finch*, 3 *Ohio St. Rep.*, 445, and approved by this court.

The court, for defendant, instructed the jury that if they believed that Thomas delivered the cotton, or caused it to be delivered, at Des Arc, according to the contract, they should find for the defendant. The criticism is upon the words "according to the contract," which, it is said, submits a matter of *law* to the jury. It does not seem so. The writing, if valid, was plain and the jury might determine very well, as a matter of fact, whether there had been a delivery of cotton. As to what in law would constitute a delivery, was a matter, which, if the plaintiff had supposed it doubtful, he might have asked the court to define.

The seventh instruction given for defendant—passing over the fifth, upon which no point was made, is as follows :

" The jury are also instructed that if they find that there was no alteration of the note ; then if they further find that Thomas carried the cotton to Des Arc ; and Gans, at or afterwards went there to receive or see about it, saying 'he was going to see about his Thomas cotton,' these are facts *to be considered by the jury*, as evidence that the cotton was carried to Des Arc at Gans' request, and if they so believe, they will find for the defendant."

The evidence was that Thomas had had cotton hauled for Gans, to Stewart's warehouse, in Des Arc, as much as four or five loads of bales, weighing from 450 to 500 lbs., and six bales to the load, which had been received there by the warehousemen, without question, as if they understood the matter. The cotton was more than enough to discharge the obligation ; and if taken by Gans in discharge, even with an implied obligation to account for the excess, would have

2. SALE OF COTTON: Delivery, what sufficient.

Gans v. Holland, Adm'r, etc.

Weighing and setting apart, not always necessary, passed to Gans as his property, without any weighing or other designation. It is not true that cotton must be always weighed and the exact number of pounds set apart to make a transfer. It is generally done before property is received, but it is not at all essential. Any agreement to receive on one side and abandon control on the other, of property, is sufficient to transfer title.

It must be confessed that the evidence of the delivery and transfer of the cotton to Gans, in this case, is very meagre and unsatisfactory, but it was *competent* evidence, nevertheless, so far as it went; and considering the lapse of time and the disturbed state of the country, and the better acquaintance of the jury with the circumstances of their particular locality, and the modes of business prevalent at the time in the community, if it is satisfied, then we do not feel authorized to disturb the verdict. We cannot say there was no evidence of a substantial nature to sustain the verdict on the ground of payment.

The jury came into court after retirement to ask an explanation of instructions. The court told them orally, " that if they believed the cotton was taken by Thomas to Des Arc, and left there at the request of the plaintiff, it was a delivery within the terms of the contract." It is always understood in these off-hand instructions, that the belief must arise *from the evidence*, and if either party desires to have this impressed on the jury, it may easily be done. The oral instruction is not amenable to criticism.

There are less important objections to the verdict, not useful to notice. We have no legal means of knowing whether it was rendered upon the ground of payment, or the invalidity of the note, resulting from the alteration. There was evidence on both points, and we think the matter was fairly left to the jury. We cannot say that a verdict for the plaintiff would have been more satisfactory.

Affirm the judgment.