MEYERS *v.* MEYERS.

4-8664                                                216 S. W. 2d 54

Opinion delivered December 13, 1948.

Rehearing denied January 24, 1949.

*Frank C. Douglas,* for appellant.

*W. Leon Smith,* for appellee.

HOLT, J.    This is the second appeal in this case. Reference is made to the opinion on the former appeal for a more complete statement of the facts, *Meyers* v. *Meyers,* 210 Ark. 714, 197 S. W. 2d 477.    That opinion becomes the law in the present case.

In reversing the case, on the former appeal, we said: "It follows that appellant is entitled to a decree against

appellees for the value of the stocks at the time they were converted by appellees, with interest at the legal rate from the date of the conversion, less credits by way of dividends paid by appellees to appellant from time to time. Since some of the items necessary to a proper computation of the amount of the decree are not clearly shown by the proof, we reverse the decree of the lower court and remand the cause with directions to the court below to enter a decree in favor of appellant in accordance with this opinion, and, if necessary to do so, to take additional testimony as to any items entering into a calculation of the amount due to appellant from appellees; and all costs to be adjudged against appellees.''

Following remand, the trial court heard evidence on the value of the stock on the date of conversion, and the credits, to which appellees were entitled and decreed ''that the plaintiff (appellant, Mrs. Annie Meyers) take nothing on her complaint and that she have and recover nothing against the defendants herein (appellees),'' and that she pay all costs.

The decree further recited: ''The plaintiff contends that the date of conversion of her stocks by the defendants was on June 16, 1930, the date her stocks were received by H. & B. Beer and credited to the account of Meyers Bros., and that on said date the total value of her stocks was the sum of $4,912.75.

''The defendants contend that the plaintiff endorsed the stock certificates in question in blank and turned them over to the defendant to be used by them as collateral security to the account with their stock broker, and that the dates of conversion of said stocks were the respective dates when all the stock in the defendant companies were finally sold, and when it became impossible because of such sales for the defendants to have withdrawn the number and kind of shares of stocks to replace those turned over to them by the plaintiff.''

The Court found that the Montgomery Ward and Chrysler stocks were converted on December 23, 1932; the General Motors stocks on February 15, 1933; the Anaconda Copper on December 22, 1932, and the Grigsby

Gruno on December 17, 1930, and entered a decree as above indicated.

This appeal followed.

The decisive question now presented is: On what date were the stocks in question converted by appellees, and their value as of that date, together "with interest at the legal rate from the date of the conversion, less credits by way of dividends paid by appellees to appellant from time to time"?

"A conversion in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's rights, or in withholding the possession from the plaintiff, under a claim of title, inconsistent with his own." (Ray v. Light, 34 Ark. 421.)

As pointed out in our former opinion, Mrs. Annie Meyers, appellant, had invested $5,546.88 in the stocks here involved and on June 13, 1930, at the request of appellees, her stepsons, "she indorsed the certificates, evidencing her ownership of these stocks, and turned same over to appellees and they gave her the following receipt therefor:

"Letterhead of Meyers Bros., Cotton Merchants, "Blytheville, Arkansas, June 13, 1930.

"We hold in trust and receipt of Mrs. Annie Meyers —the following stocks: 10 shares Anaconda Copper, 25 shares Chrysler Corp., 25 shares Montgomery Ward, 50 shares General Motors, 20 shares Grigsby Gruno. (Signed) Meyers Bros., by Max Meyers."

"Appellees were in financial difficulties when they obtained the stock certificate and in 1931 they disposed of all these stocks, belonging to their stepmother, the appellant, and used the proceeds thereof to apply on their own indebtedness. They did not inform appellant that they had sold her stock, but, on the contrary, they continued to pay her every three months, up until about March, 1944, the amount of dividends regularly accruing on these stocks. . . .

"Appellees in their testimony admitted the conversion of the stocks by them and the concealment from appellant of the fact of this conversion, as well as the payment to her of dividends on the stocks for thirteen years after they had disposed of the stocks. They attempted to justify their breach of trust by saying that their father owed appellee, Max Meyers, $6,000 and that for this reason they did not feel obligated to account to their stepmother for the securities which they held in trust for her."

In the present suit, it was stipulated: "That the list of stocks involved in this suit was forwarded by the defendants to H. & B. Beer, later Beer & Company, New Orleans, La., and was received by said firm and credited to the account of Meyers Bros. on June 16, 1930; that the value of said stocks on said date was as follows:

| | | | |
|---|---|---|---|
| 10 shares of Anaconda Copper | 51¼ | $512.50 |
| 25 shares Chrysler Corp. | 30¾ | 768.75 |
| 25 shares Montgomery Ward | 39½ | 986.50 |
| 50 shares General Motors | 44½ | 2,225.00 |
| 20 shares Grigsby Gruno | 21 | 420.00 |

"Total value as of June 16, 1930 ............ $4,912.75"

On this appeal, it was contended that there was a pencil notation on the bottom of the receipt, *supra*, (and after the signatures) which notation read: "This stock is sent to Beer & Co. and in their possession"; that because of this notation, appellees, in their oral argument here, insisted that Mrs. Meyers gave them authority to place the stock with Beer & Co., and that no conversion occurred as long as the stock was with Beer & Co. We cannot agree with this contention.

Our former opinion (now the law in the case, as indicated) did not show any such pencil notation when we set out the trust receipt therein, so we disregard such notation.

We said in *Storthz* v. *Fullerton*, 185 Ark. 634, 48 S. W. 2d 560: "It is well settled that on a second appeal the judgment on the former appeal becomes the law of the case, and is conclusive of every question of law or

fact decided in the former suit, and also of those which might have been, but were not presented.''

The result is that appellees had no right to place the stock certificates with Beer & Co., and we hold that their act in so doing constituted a conversion as of that date, which was June 16, 1930.

The great preponderance, if not the undisputed testimony shows that after computing interest at the rate of 6% on the value of the stock, valued at $4,912.75, as of June 16, 1930, and crediting appellees with all dividend payments made to appellant, appellant was entitled to a decree for $5,951.92, with 6% interest thereon from January 1, 1948.

Accordingly, the decree is reversed and judgment entered here for appellant in the amount of $5,951.92 with 6% interest from January 1, 1948, together with all her costs in both courts.

GRIFFIN SMITH, Chief Justice, dissenting. The majority rests its decision upon an opinion-assertion that '' . . . appellee had no right to place the stock certificates with Beer & Company.'' *Undisputed* evidence is to the contrary. The trust agreement expressly gives the authority to pledge, and the broker's books show that that agency was informed of Mrs. Meyers' ownership.

The circumstance that in a former appeal (where the cause was remanded) it was not thought necessary to the opinion to mention the authorizing notation does not erase the record, nor can a judicial rule known as the law of the case transform from actuality to nihility material matter presented to a non-seeing eye.

I agree with my associates that Meyers Brothers deceived their step-mother, and she is entitled to appropriate relief. But this does not mean we should arbitrarily erect a structure of justice that to build involves something less than consideration of all pertinent facts.