American-Canadian Oil & Drilling Corp. *v.*
Aldridge & Stroud.

5-3059                                                    373 S. W. 2d 148

Opinion delivered December 16, 1963.

*Joel B. Dickinson,* Baton Rouge, La., *Conley Byrd,* for appellant.

*Mehaffy, Smith, Williams, Friday & Bowen,* and *D. D. Panich,* for appellee.

E. DeMatt Henderson, Special Associate Justice. This appeal is a sequel to the case of *Aldridge & Stroud, Inc.* v. *American-Canadian Oil & Drilling Corp.,* 235 Ark. 8, 357 S. W. 2d 8, and reference is made to such former opinion for certain of the basic facts involved in this appeal. Upon the remand required by that decision, Mr. D. D. Panich and the law firm of Mehaffy, Smith & Williams (who jointly will be designated The Attorneys) petitioned the Chancery Court for allowance of attorneys' fees and expenses incident to their representation of appellant, American-Canadian. William T. Foran

and Mrs. Kay Van, the parties whose claims to the oil properties were sustained in our former opinion, resisted such petition by respectively filing a Response and a Brief in Opposition; and appellant filed an extensive answer denying the propriety of any fee.

Following hearings held on July 9 and November 27, 1962, the Chancellor on December 13, 1962 entered a comprehensive decree which again fully adjudicated the rights of the nine separate parties to this complex litigation; and in addition granted The Attorneys' petition and fixed their fee at $30,000.00 for services rendered appellant, and awarded Aldridge & Stroud judgment on its note (which our former decision held valid) in the sum of $89,842.50, based upon principal of $75,000 plus accrued interest and an award of $7,500 for attorneys' fees. Only American-Canadian has appealed and for reversal urges that The Attorneys should be denied any fees because they represented conflicting interests in appearing as solicitors for both appellant, as the maker of the note, and Aldridge & Stroud, as its holder, and further that the award of attorneys' fees to Aldridge & Stroud was violative of public policy. Appellant does not *now* question the amount of either of the fees awarded, but asserts it was error to award any fees.

The primary question for determination is whether The Attorneys did, either in fact or as a matter of law, represent conflicting interests by acting in their dual capacity as attorneys for appellant and Aldridge & Stroud, for if such were the case we would unhesitatingly hold that they thereby forfeited all rights to any compensation. No rule of law is more firmly established than that—"A fiduciary relationship exists between attorney and client, and the confidence which the relationship begets between the parties makes it necessary for the attorney to act in utmost good faith." *Norfleet* v. *Stewart,* 180 Ark. 161, 20 S. W. (2) 868. This high fiduciary relationship positively precludes attorneys from representing conflicting interests as was well stated in *Silbiger* v. *Prudence Bonds Corporation,* 180 Fed. (2) 917, where Judge Learned Hand observed:

"Certainly by the beginning of the Seventeenth Century it had become a commonplace that an attorney must not represent opposed interests; and the usual consequence has been that he is debarred from receiving any fee from either, no matter how successful his labors. Nor will the court hear him urge, or let him prove, that in fact the conflict of his loyalties has had no influence upon his conduct; the prohibition is absolute and the consequence is a forfeiture of all pay."

This Court in *Norfleet, supra,* quoted with approval from *Baker* v. *Humphrey,* 101 U. S. 494, where it was said, "Courts of Justice can best serve both the public and the profession alike by applying firmly upon all proper occasions the salutary rules which have been established for their government in doing the business of their clients." Being mindful of these commendable and indeed essential rules and the duty of courts firmly to enforce them we have reached the conclusion that in this case The Attorneys did not represent conflicting interests.

There are undoubtedly situations where the active practicing attorney may properly appear for more than a single client without in any manner being placed in a position of divided loyalty, or be exposed to the temptation to conciliate rather than vigorously espouse the rights of the clients he represents. This is particularly true of litigation not strictly *inter partes* such as probate proceedings, corporate reorganizations, bills of interpleader, and indeed litigation of this very type which was so accurately characterized in our former opinion as a "free-for-all receivership." In *Deupree* v. *Garnett,* 277 P. 2d 168 the Oklahoma court quoted with approval from 7 CJS, Attorney and Client, Section 47, as follows: "However, it is not inconsistent with the status or office of attorney that he represents different interests which are not actually adverse in the sense that they conflict or are hostile. Mere possibility that different interests represented by an attorney might develop a conflict is not sufficient to disqualify him."

This Court has twice recognized that in actions on notes an attorney does not, *as a matter of law,* represent conflicting interest by acting for both the holder and the maker of a note who admits the validity of the obligation. In the early case of *Wassell* v. *Reardon,* 11 Ark. 705, the defendant maker gave to plaintiff's attorney a power to confess judgment and the resulting judgment was upheld. Again in *Houpt* v. *Bohl,* 71 Ark. 330, 75 S. W. 470. the defendants authorized plaintiffs' attorney to waive service of summons and enter their appearance and consent to judgment which this Court then sustained. So it cannot be held, as a matter of law, that The Attorneys in this case had a conflict of interest simply because they represented both appellant as maker and Aldridge & Stroud as holder of the note.

In determining whether, in fact, there was a conflict of interest we have tested the dual representation against the conduct prescribed by the Canons of Professional Ethics of The American Bar Association, which we adopted April 24, 1939, the applicable Canon being No. 6 which specifies:

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose."

Adapting this Canon to the situation under review, the question is presented:

Did The Attorneys represent conflicting interests when as attorneys for Aldridge & Stroud it was their duty to contend that the note it held was valid, while their duty as attorneys for American-Canadian required them to oppose such contention?

To decide this important question it is necessary to refer to certain facts reflected by the record filed herein on the former appeal. If we could not do so the present appeal would necessarily have to be summarily dismissed

without any consideration of the merits of appellant's contentions. Aside from formal portions and matters not relating to the question of conflict of interest, the transcript filed with this present appeal contains only The Attorneys Petition for Fee, the appellant's Answer denying liability, and the Response to said Answer, none of such pleadings being verified; and the decree of the learned Chancellor which recites that the lower court considered in reaching its decision not only the pleadings and trial briefs filed but also "the evidence adduced on behalf of the parties." Appellant not having included such evidence in the present record before us, we would be required to affirm under the well established rule that requires affirmance in such a situation, unless there be error reflected on the face of the record, and, as we have determined, no such apparent error appears.

While routinely all appeals are assigned different numbers by our Clerk, the decree now appealed from was entered in the same numbered case below; that portion of the decrees allowing the Aldridge-Stroud intervention was in obedience to our mandate in the former appeal; and on this present appeal in this same cause we need not close our eyes to what was filed in this Court in the prior appeal since "the former transcript is still before us, and the Court takes notice of its contents." *Gans* v. *Holland* 37 Ark. 483; *Stueart Wholesale Grocery* v. *N. Sauer Milling Co.* 201 Ark. 1185, reported only in 143 S. W. (2) 546. Rules of Supreme Court No. XVI.

We thus can proceed to examine the true relationship which existed between appellant and Aldridge & Stroud in the proceeding below in which The Attorneys represented both these parties. The Attorneys representation of appellant continued even after Mr. Panich received a letter of discharge dated July 9, 1960, which was promptly reported to the Court, and at the start of the actual trial of September 13, 1960, it was announced in open court, with appellant's President present, that the late Mr. J. Hugh Wharton was also now associated with The Attorneys as counsel for appellant. It is interesting to note that Mr. Wharton filed briefs on the first

appeal for *both* appellant and the intervenor, Mrs. Kay Van, who claimed and was awarded an interest in appellant's properties and noting his dual employment in his brief stated: "There was no conflict of interest between American-Canadian and Mrs. Kay Van, as a matter of fact it was understood that the corporation was justly indebted to Mrs. Van and wanted her to recover her moneys." Mr. Wharton, appellant's former attorney, succinctly stated The Attorneys position here.

It is clear that at all stages appellant has concurred in and actively supported the contention Aldridge & Stroud made in its Intervention that the note it held was a just claim. In a deposition taken February 25, 1960, when questioned by attorneys desiring to invalidate the note, appellant's President, Mr. T. E. Robertson, testified that the execution of the note was duly authorized by appropriate corporate action, was supported by a true consideration, and constituted a valid, binding and enforceable obligation; and in this he was corroborated by the deposition of appellant's Secretary. At the trial on October 25, 1960, when called to the stand and examined closely by several adversary attorneys also desiring to upset the note, Robertson reaffirmed his position that the note was valid in every respect.

The only persons who at any time asserted any contentions opposed to those of Aldridge & Stroud were the various other parties no longer involved in this litigation, such as Crabtree, Foran, Nielson, Mrs. Van and Mrs. Roberts, whose interests in defeating the note and thereby enhancing the value of their claims were real, and whose opposition was genuine and vigorous. These rival claimants to appellant's property all asserted that the note was invalid; but they, *and only they,* opposed the allowance of the Intervention of Aldridge & Stroud, while appellant supported it.

Indeed, these rival claimants even intimated that appellant's President had joined forces with Mr. Stroud, a director of appellant, and President of Aldridge & Stroud, to create a fictitious indebtedness to their detriment. The Chancellor tacitly agreed and disallowed the

note for want of consideration and on the former appeal we reversed on the basis of appellant's own testimony "that the note and assignment were legal and valid in every respect" as contended by Aldridge & Stroud.

Appellant relies principally upon *Strong* v. *International Building, Loan & Investment Union* (1889) 183 Ill. 97, 55 N. E. 675, and asserts in its brief that such case deals "with this same problem;" but there is vital distinction between that case and the one at bar. In *Strong* the attorney for the court appointed receiver also represented the Union in receivership, and the Illinois court pointed out that Strong admitted in his testimony, "that the Union was *antagonistic* to the receivership." This, of course, created a true case of conflicting 'interests and denial of any fee was proper.

In this case at no time since Aldridge & Stroud first presented their claim through an Intervention filed by The Attorneys on July 11, 1957, did appellant become antagonistic to the allowance of such claim; but in stark contrast The Attorneys bottomed their case upon appellant's support of their contentions. As distinguished from the assertion of adverse contentions The Attorneys two clients testified in harmony. With such harmony, mutuality and unity characterizing the positions of their two clients we have no difficulty in deciding that The Attorneys never encountered any conflict in the duties owed to either.

The record further reveals sufficient facts to justify affirmance upon the ground that appellant by long acquiescence, with knowledge of the dual employment, waived any right to object (see 52 A.L.R. (2) at 1268); but we prefer to base our affirmance of the fee award for their representation of appellant upon the specific holding that The Attorneys did not represent conflicting interests since it never became their duty on behalf of Aldridge & Stroud to contend for that which duty to appellant required them to oppose.

Appellant also asserts that the trial court erred in awarding attorneys' fee in favor of Aldridge & Stroud

as authorized by the terms of its note. The basis for this contention as stated by appellant is that since the attorney represented conflicting interests it would be "against public policy for them to be awarded a fee to be paid from the pocket of American-Canadian."

What we have held with regard to the alleged conflict of interest leaves for consideration only the question as to whether the allowance of a fee to the note holder in this instance violates some "public policy." In their brief appellant states: "Counsel for appellant have been unable to find a case in point, but sound logic would dictate that the law should be such . . ."

The maker was involved in a New York bankruptcy proceeding, had no assets other than the properties involved in this suit, and the only conceivable way the holder could hope to collect was to perfect its claim to a lien upon the properties in the "free-for-all receivership" in the Chancery Court. To do this Aldridge & Stroud had to employ attorneys, and we have held that the selection of the attorneys involved was proper. Although the attorneys had the cooperation of the maker they did not have smooth sailing. Other claimants to the properties aggressively opposed their claim, the Chancellor denied it, and they finally prevailed only by successfully prosecuting an appeal to this Court.

Our holding in the first opinion that the note and its supporting assignment or mortgage were enforceable obligations becomes the law of the case. *Meyers* v. *Meyers*, 214 Ark., 273, 216 S. W. (2d) 54. The provision of the note for an award of attorneys' fees not exceeding ten per cent, cannot be seprated from its other provisions and is now enforceable in Arkansas. Ark. Stats. Ann. 68-910. We can perceive of no public policy which precludes Aldridge & Stroud from obtaining the benefit of this provision contained in a note which the law of the case holds valid, when the realities of the case required they be represented by attorneys to enforce their claim.

Appellant does not question the amount awarded; and in our opinion cannot on this appeal for the first time question the validity of the award. When the case was remanded with directions to allow the note as a valid claim the only action required of the Chancellor was to compute the amount of the Aldridge & Stroud judgment and then enter an appropriate decree. It is apparent that appellant did not question before the Chancellor the inclusion of an attorney's fee in such computations.

When following remand The Attorneys petitioned for a fee for services rendered to appellant it promptly filed a detailed and extensive answer and protest; but in such lengthy pleading no objection is made, even indirectly, to the inclusion of an attorney's fee in the Aldridge & Stroud judgment. Nor was any pleading ever filed directly objecting to an attorney's fee to Aldridge & Stroud. The proceedings at the two hearings held prior to the entrance of the questioned decree are not shown. All that the record before us contains relating to the Aldridge & Stroud judgment is (a) the intervention with its prayer for attorney's fees, (b) the mandate which issued upon the former appeal, (c) and the decree now under review. The record is thus completely silent as to any objection to the $7,500.00 fee having been made at any time before the lower court.

Conversely the record does strongly indicate that appellant actually consented and initially agreed to the attorney's fee included in the Aldridge & Stroud judgment.

Appellant has designated as part of the record on appeal the Chancellor's docket entry made contemporaneously with entrance of the decree, and such appears at page 26-A of the transcript and reads, ''Decree as per precept filed this day *by consent of all parties, except,* American-Canadian Oil & Drilling Corp. excepts to any amount of attorney fee to Mchaffy, Smith & Williams and D. D. Panich over and above the amount of $15,-000.00. And notice of appeal given as to the balance of the fee in the sum of $15,000.00.'' (Italics added). The first notice of appeal filed January 4, 1963 corroborates

the docket entry and did not question the Aldridge & Stroud judgment. By an amended notice of appeal, timely filed by different attorneys, appellant appealed generally from the decree of December 13, 1962 and in the designation of points to be relied upon *for the first time* assert error in the inclusion of attorneys' fees in the Aldridge & Stroud judgment. In view of the cases concerning the efficacy of docket entries, we cannot conclusively say that the Aldridge & Stroud judgment was entered by consent, in which case it would not be appealable, since the decree itself does not so recite. *Herrod* v. *Larkins,* 183 Ark. 509, 36 S. W. (2d) 667; *City of Monticello* v. *Kimbro,* 206 Ark. 503, 176 S. W. (2d) 152; *Pittsburg & St. Louis R.R. Co.* v. *Johnson,* 93 N.E. 683.

We do conclude that there being nothing in the record filed in this Court to show that the issue of the allowance of attorneys' fees to Aldridge & Stroud was raised in, or considered by, the trial court, this Court Constitutionally vested only with appellate and supervisory jurisdiction cannot consider such issue for the first time on appeal. *Missouri Pacific R.R. Co.* v. *Myers Commission Co.,* 196 Ark. 976, 120 S. W. (2) 693.

The decree of the lower court is affirmed.

Ward, J. not participating.

George Rose Smith, J., dissents in part.

George Rose Smith, J., (dissenting in part). With respect to the main issue, the $30,000 fee, I agree that there was no conflict of interest in The Attorneys' representation of both American-Canadian and Aldridge & Stroud in their common fight against third persons. But I do think that a conflict of interest was foreseeable, and in fact has arisen, with respect to the $7,500 fee that is being allowed for the services of The Attorneys in handling the claim of one of their clients, Aldridge & Stroud, against another client, American-Canadian.

It will be remembered that Aldridge & Stroud held American-Canadian's note for $75,000. The note bound the maker to pay a 10 percent attorney's fee if a suit for collection became necessary. Such a provision does

not mean, however, that the court must award the full 10 percent in every instance. Only a reasonable fee is to be allowed. *Citizens Nat. Bank* v. *Waugh,* 4th Cir., 78 F. 2d 325, annotated in 100 A.L.R. 939. Our statute is in harmony with this rule, for it validates such a stipulation for an attorney's fee, not to exceed 10 percent, ''for services actually rendered.'' Ark. Stat. Ann. § 68-910 (Repl. 1957).

The requirement that the fee be reasonable creates a true dilemma in this case. One horn: If American-Canadian made no defense whatever to the claim of Aldridge & Stroud, so that there was actually no dispute between these parties, then American-Canadian may fairly question the reasonableness of a $7,500 attorney's fee for taking what amounted to a default judgment in a friendly suit. The other horn: If American-Canadian resisted the claim, so that the fee was unquestionably earned, then that very resistance demonstrates that an actual controversy existed between the two litigants.

I do not mean that a fee of $7,500 was not earned. The claim of Aldridge & Stroud was contested by other creditors of American-Canadian, so that The Attorneys were confronted with a serious lawsuit. But American-Canadian is certainly in a position to assert that, after having made no resistance itself to the claim, it ought not to be compelled to pay a fee that was brought about only by the opposition of third persons. Hence the issue that has been dormant all along and now becomes active is this: Which of The Attorneys' clients is to be compelled to pay this fee? I am unable to agree with the majority's conclusion that in this situation no conflict between the clients is discernible.