**ROLFSTAD, WINKJER, SUESS, McKENNETT AND KAISER, P.C.,**
Plaintiff/Appellee,

v.

**Robert HANSON, Defendant/Appellant.**

Civ. No. 8996.

Supreme Court of North Dakota.

Aug. 27, 1974.

Rolfstad, Winkjer, Suess, McKennett & Kaiser, P. C., Williston, pro se.

Wheeler, Wolf, Wefald & Durick, Bismarck, for defendant/appellant.

JOHNSON, Judge.

This case is the fourth in a series of appeals related to an oil well drilled within a portion of the Garrison Reservoir. The rising waters of the reservoir necessitated the construction of an earthen mound to protect the well site. This litigation has come to be more popularly known as the "Mound Cases." Odegaard v. Investors Oil, Inc., 118 N.W.2d 362 (N.D.1962); Stetson v. Investors Oil, Inc., 140 N.W.2d 349 (N.D.1966); Stetson v. Investors Oil, Inc., 176 N.W.2d 643 (N.D.1970).

The respondent (the Rolfstad firm) recovered in the district court on its suit for attorney fees and the counterclaim of appellant (Hanson) was dismissed. We affirm the judgment of the district court.

The Rolfstad firm sued Hanson for two unpaid bills for legal services. One billing was for $950 arising from a title opinion rendered on a proposed oil well site and adjacent acreage in March of 1969. The other was for $350 based upon services actually performed by attorney Frederick Whisenand of Williston in connection with certain later stages of the mound litigation. Hanson contends that the $950 was not his personal obligation but was merely an obligation of the corporation he represented. He further contends that the action taken by Mr. Whisenand was not authorized by him. His counterclaim was based upon charges of conflict of interest and improper handling of a dispute between him and his then partner, a Mr. William Walters.

The title opinion was rendered by Dean Winkjer of the Rolfstad law firm. Mr. Winkjer hired a local oil broker to assist him with preparation of an abstract of the original title records; the broker's fee of $300 is included in the $950 bill.

The testimony is conflicting as to the extent of direct communication between Mr. Hanson and Mr. Winkjer regarding

the title opinion. Mr. Winkjer contended that Hanson specifically requested that he do the title opinion and advised that the Henretta law firm of Minneapolis would instruct him as to when it should be done. Mr. Winkjer received a letter from Mr. Blohm of that firm, dated March 5, 1969, requesting that the title opinion be furnished. There was also testimony to the effect that Mr. Hanson was aware of the request made by the Henretta firm and confirmed the authorization by requesting that the opinion be received quickly. Mr. Hanson denied that he ordered the title opinion or authorized the Henretta firm to do so on his personal account.

Mr. Winkjer had previously been retained in connection with the "Mound Cases" litigation. Mr. Winkjer's primary clients in this capacity were the investors having the working interests in the project. However, he also represented Mr. Hanson in connection with an overriding interest that he held. After some time it became apparent to Mr. Winkjer that he faced a possible conflict of interests between Mr. Hanson and the other investors. To eliminate the conflict, Mr. Winkjer arranged, with the approval of Mr. Hanson's Minneapolis attorney, to have another attorney, Mr. Whisenand, appear in the action on behalf of Mr. Hanson. Mr. Whisenand was selected largely because he was already familiar with the case and represented Mr. Walters, who had essentially the same interest as Mr. Hanson.

In an effort to avoid a prolonged trial, the parties entered into a stipulation on October 28, 1968, pertaining to the facts of the case. That stipulation was not signed by Mr. Hanson but was signed by the respective attorneys in the action and the stipulation was read in its entirety over the telephone to Mr. Muirhead, the Minneapolis attorney for Mr. Hanson, who gave his approval. A copy of the stipulation was subsequently forwarded to Mr. Muirhead for his review.

The trial court held that the interests of the working-interest owners were subject to the judgment lien but not the interests of the overriding royalty holders, Mr. Hanson and Mr. Walters. The case was appealed to this court and the judgment of the trial court affirmed. The bill for $350 was for Mr. Whisenand's services in representing Mr. Hanson in the district court and the supreme court in connection with those proceedings.

■ The first aspect of this case is concerned with objections to the authority of the lawyer to proceed on behalf of his client. This arises in several areas: the right to act for Mr. Hanson on the title opinion, the authority to make the stipulation in the litigation, and the authority to employ other counsel when an apparent conflict of interests arose. The authority of the lawyer to act for his client stems from the law of agency. Riebold v. Hartzell, 23 N.D. 264, 136 N.W. 247 (1912). However, there are certain aspects of the attorney's authority that must be inherent and peculiar to the attorney-client relationship. Where a duly licensed attorney at law appears in an action or proceeding, it is presumed that he has authority to appear for the person for whom he assumes to act. Moe v. Zitek, 75 N.D. 222, 27 N. W.2d 10 (1947); Bacon v. Mitchell, 14 N. D. 454, 106 N.W. 129 (1906). See also, Riebold v. Hartzell, *supra*. The business of the courts must proceed on this presumption. In addition, the client may ratify acts of the attorney not otherwise authorized, by acquiescence over an extended period, with full knowledge of the facts. *Ibid.*

■ A second aspect of this case involves the questions raised concerning the professional conduct of the attorney. Hanson contends that he was not properly represented in that the stipulation of facts was signed without his knowledge, that the manner of handling the proceeding compromised his claim against Mr. Walters, and that Mr. Whisenand could not properly represent him because of a conflict of interest between Mr. Hanson and Mr. Wal-

ters. Questions regarding the professional conduct of lawyers are viewed with great concern by this court. The Code of Professional Responsibility binds the members of the bar of this court to standards of conduct consistent with their role as guardians of the law and officers of the court. Conduct which might be considered acceptable for other persons may not be so for a lawyer acting in his professional capacity. The question of conflict of interests in representing multiple clients has been raised here. The statement of ethical considerations under the Code has several comments on this question:

> "If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests." ABA Code of Professional Responsibility, EC 5–15.

> "In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires." ABA Code of Professional Responsibility, EC 5–16.

 The client may be entitled to damages for losses resulting from his attorney's failure to exercise the degree of care, skill and diligence commonly exercised by reasonable and prudent lawyers within the State. Feil v. Wishek, 193 N. W.2d 218 (N.D.1971). The attorney may also be liable to his client for losses resulting from representing adverse interests.

The lawyer who does not represent his client with undivided loyalty is not ordinarily entitled to compensation for his services. American-Can. Oil & D. Corp. v. Aldridge & Stroud, Inc., 237 Ark. 407, 373 S.W.2d 148 (1963); Silbiger v. Prudence Bonds Corporation, 180 F.2d 917 (2 Cir. 1950).

 It is not the function of this court, as an appellate tribunal, to resolve testimonial conflicts and to make factual findings. Where, as here, a case is tried without a jury, we are governed by the provisions of Rule 52(a), N.D.R.Civ.P.:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

As was stated in Kee v. Redlin, 203 N.W. 2d 423 (N.D.1973):

> "In applying this rule this court must give great weight to the findings made and the inferences drawn by the trial judge. The mere fact that we may have reached a different result does not justify us in setting the findings aside. We will do so only if we find, based on all the evidence, that the findings are clearly erroneous."

 There were numerous conflicts in the recollection of the principal witnesses, Mr. Winkjer and Mr. Hanson, concerning conversations and communications between them. The litigation and the relationships between the parties were long and complex. The trial judge made his own independent and informed examination of the principal witnesses and their relationships. He found that the billings were consistent with the reasonable value of the services performed. He found that there was informed acquiescence and ratification of the attorney's actions. He also found that there had been a judgment made not to open up the "can of worms" consisting of the dispute between Mr. Hanson and his partner, Mr. Walters. There was apparent

good reason to have the litigation proceed unfettered by this additional complication.

We do not suggest that either side is without sin in this matter. If there had been a greater degree of communication between lawyer and client, or clients, this matter may never have resulted in litigation. The savings in time and money by involving Mr. Whisenand as attorney for Mr. Hanson might have been outweighed by the potential conflicts. However, we are not prepared to reconstruct the complexities of the situation as it then occurred and substitute our judgment of the facts for that of the trial court. We cannot say that these findings are "clearly erroneous." The judgment is affirmed.

ERICKSTAD, C. J., and KNUDSON, PAULSON and VOGEL, JJ., concur.