**Charlene SANDERS and Levon Sanders, Appellants,**

v.

**Earl TOWNSEND, Jr. and Townsend, Hovde, Townsend & Montross, Appellees.**

**No. 29S02–9112–CV–947.**

Supreme Court of Indiana.

Dec. 3, 1991.

Jon R. Pactor, Indianapolis, for appellants.

Cory Brundage, Ice Miller Donadio & Ryan, Indianapolis, for appellees.

DeBRULER, Justice.

This cause comes to us on a petition to transfer from the Second District Court of Appeals. The petition is granted so that we may decide whether a lawyer's alleged breach of a fiduciary duty to a client gives rise to a claim for constructive fraud. The trial court below granted appellees' Motion for Summary Judgment stating that the evidence presented to the court demonstrated that there was no genuine issue of material fact and that appellants had failed to state a valid claim of constructive fraud against appellees. The Court of Appeals reversed the summary judgment, holding that appellees had failed to negate at least one element of appellants' claim and that there were genuine issues of material fact. *Sanders v. Townsend* (1987), Ind.App., 509 N.E.2d 860. For the reasons and on the conditions set forth below, we now grant transfer and affirm the trial court.

Charlene Sanders and her husband, Levon, appellants, retained Earl Townsend, Jr. and the law firm of Townsend, Hovde, Townsend & Montross (collectively referred to as Townsend), appellees, to represent them in a suit for damages arising out of the injuries Charlene sustained in an automobile accident with a third party on December 15, 1980.

After Sanders' complaint was filed, Townsend negotiated a settlement with the third party's insurer in the amount of $3094.50, which Sanders accepted. Sanders later filed suit against Townsend claiming that the settlement was inadequate and that Townsend coerced them into accepting it against their better judgment. According to the deposition of Charlene Sanders, Townsend, in stating the risk of rejecting the settlement and going to trial and in order to pressure appellants to accept the settlement, made the following statements:

And he kept telling me something about they had a change of venue. And they had taken it to Tipton County.

And if I were to take my case to the court in Tipton County, I would lose because I'm a black woman and I wouldn't have a chance in Tipton County. And he felt that I should go on and hurry up and get this settled out.

And he said if I didn't go on and settle this that he would just have to put it in the dead file because he knew I didn't have a case with me going to Tipton County. And he didn't leave me with too much of a choice.

Townsend repeated the statement that they would receive no damages at all if they refused to quickly accept the settlement he had arranged.

I asked him, I believe, at one time what would happen if I went to another lawyer. And he said, "You don't have a case." He said, "I'm telling you you don't have a case."

He said, "So, you might as well go on and get this thing over with."

\*       \*       \*       \*       \*       \*

No, he didn't tell me I couldn't [go to another lawyer]. But I felt like I was under responsibility of—not responsibility but I felt like I was responsible to him or whatever. I had a contract with the man.

Finally, the fee agreement between the Sanders and Townsend contained a clause providing that Sanders would not settle or discuss their own case with anyone but would leave the entire matter in Townsend's hands.

Townsend moved for summary judgment on both the negligence and constructive fraud counts, which the trial court granted. The trial court then denied Sanders' Motion to Correct Error. The Court of Appeals affirmed the summary judgment entered for Townsend on the count of negligence, but reversed as to the constructive fraud count, holding that Sanders had pleaded a prima facie case of constructive fraud and that Townsend had failed to show that the Sanders were not damaged by their loss of the right to choose between trial and settlement or

amongst settlements. *Sanders*, 509 N.E.2d at 866–67. We adopt and incorporate that part of the opinion of the Court of Appeals affirming summary judgment on the negligence count, Ind. Appellate Rule 11(B)(3), however, that part of the opinion dealing with the constructive fraud issue is vacated.

■ Fraud may be actual or constructive, and the presence or absence of an intent to deceive distinguishes actual from constructive fraud. Intent to deceive is not an element of constructive fraud; instead, the law infers fraud from the relationship of the parties and the circumstances which surround them. *Budd v. Board of Comm'rs of St. Joseph County* (1939), 216 Ind. 35, 22 N.E.2d 973; *Coffey v. Wininger* (1973), 156 Ind.App. 233, 296 N.E.2d 154.

■ A breach of a legal or equitable duty within the context of a fiduciary relationship may give rise to a cause of action for constructive fraud. *Hall v. Department of State Revenue* (1976), 170 Ind. App. 77, 351 N.E.2d 35; *Hall–Hottel Co. v. Oxford Square Co-op.* (1983), Ind.App., 446 N.E.2d 25. In *Westphal v. Heckman* (1916), 185 Ind. 88, 113 N.E. 299, this Court stated:

> There are certain legal and domestic relations in respect to which the law raises a presumption of trust and confidence on one side and a corresponding influence on the other. The relations of attorney and client, principal and agent, husband and wife, and parent and child belong to this class and there may be others. Where such a relation exists between two persons and the one occupying the superior position has dealt with the other in such a way as to sustain a substantial advantage, the law will presume that improper influence was exerted and that the transaction is fraudulent.

*Westphal*, 185 Ind. at 93–94, 113 N.E. at 301 (citing *Keys v. McDowell* (1913), 54 Ind.App. 263, 100 N.E. 385).

■ It is indisputable that the relationship between an attorney and client is of a confidential and fiduciary nature. "No rule of law is more firmly established than that—'A fiduciary relation[ship] exists between attorney and client, and the confidence which the relationship begets between the parties makes it necessary for the attorney to act in utmost good faith.'" *American–Canadian Oil & Drilling Corp. v. Aldridge & Stroud, Inc.*, 237 Ark. 407, 409, 373 S.W.2d 148, 150 (1963) (quoting *Norfleet v. Stewart*, 180 Ark. 161, 20 S.W.2d 868 (1929)). The fiduciary duties owed by the attorney to the client are crucial to the effective representation of the client and fundamental to the workings of our legal system. They cannot be breached without consequences to the attorney. The issue before us is what those consequences should be.

Unlike most other fiduciary obligations, the relationship between attorney and client, as well as the professional and private conduct of attorneys, is subject to several forms of "policing." First, every attorney is potentially subject to suit for legal malpractice if his or her professional competency falls below a standard of care in any particular matter. Second, attorneys may be held liable for actual fraud committed within the context of the attorney-client relationship, or generally. Third, attorneys must abide by the Rules of Professional Conduct (superceding the Code of Professional Responsibility) and are subject to sanction by this Court for their violation. Finally, as members of a regulated profession attorneys are required to meet minimum educational and competency requirements to practice law and must maintain and update their knowledge by fulfilling certain continuing legal education requirements.

In the present case the trial court found no legal malpractice on the part of Townsend and granted summary judgment on that issue. The Court of Appeals affirmed, holding that the Sanders failed to support the proposition that they were damaged by Townsend's handling of their case, and we affirm that holding. There is no allegation of actual fraud in this case. Sanders' sole remaining contention is that Townsend breached his fiduciary duties to them by coercing them into a settlement they considered inadequate, in violation of the

Indiana Code of Professional Responsibility (now Indiana Rules of Professional Conduct).

 The preambles to the Rules of Professional Conduct and the Code of Professional Responsibility make it clear that their provisions do not purport to create or describe any civil liability:

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability, but reference to these rules as evidence of the applicable standard of care is not prohibited.

Prof.Cond.Scope. The fiduciary relationship between attorney and client is defined by the rules promulgated by this Court and policed by its Disciplinary Commission. We hold, therefore, that to subject attorneys to suit for constructive fraud based on a violation of the fiduciary duties that are regulated under the Rules of Professional Conduct (or were regulated under the Code of Professional Responsibility) would create unreasonable, unwarranted, and cumulative exposure to civil liability.

If the Sanders' allegations concerning Townsend's conduct during the handling of their claim are well founded, this matter may form the basis of disciplinary action against Townsend. As Justice Swayne stated in *Baker v. Humphrey*, 101 U.S. 494, 502, 25 L.Ed. 1065, 1068 (1880), "Courts of Justice can best serve both the public and the profession by applying firmly upon all proper occasions the salutary rules which have been established for their government in doing the business of their clients." This Court investigates, processes and applies its Rules through its Disciplinary Commission.

Accordingly, we now grant transfer and affirm the summary judgment in all respects.

SHEPARD, C.J., and KRAHULIK, J., concur.

GIVAN, J., dissents without opinion.

DICKSON, J., did not participate.