ATTORNEYS FOR APPELLANT
Mark E. GiaQuinta
Robert W. Eherenman
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEY FOR APPELLEES
Robert G. Forbes
Forcum, Forbes, Danielson & Danielson LLP
Hartford City, Indianapolis

In the

# Indiana Supreme Court

No.  38S02-0703-CV-80

RONALD D. LIGGETT, d/b/a LIGGETT CONSTRUCTION COMPANY,

*Appellant (Defendant/Third Party Plaintiff),*

v.

DEAN A. YOUNG AND ELISABETH YOUNG,

*Appellees (Plaintiffs/Third Party Defendants).*

Appeal from the Jay Circuit Court, No. 38C01-0104-CP-32
The Honorable John M. Feick, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 38A02-0511-CV-1086

**December 4, 2007**

**Dickson, Justice.**

The plaintiff, Ronald Liggett, d/b/a Liggett Construction Company, brings this appeal to challenge a trial court summary judgment ruling in a contract dispute arising from Liggett's construction of a private residence for his attorney, defendant Dean Young, and Young's wife, Elisabeth.  To address whether the parties' attorney-client relationship affects the resolution of this dispute, we granted transfer, and now reverse the trial court.

In 2001, when sued by a supplier of bricks and materials used in the construction of the Youngs' home, Liggett initiated a third-party complaint against the Youngs.  The Youngs' answer

included a counterclaim against Liggett seeking damages for allegedly negligent and untimely performance of the work under the building contract. After further counterclaims and motions for summary judgment were presented, the trial court granted partial summary judgment in favor of the Youngs as to all of Liggett's claims against them. Expressly finding no just reason for delay, the trial court entered final judgment in favor of the Youngs and against Liggett as to all of Liggett's claims against the Youngs. Liggett appealed, and the Court of Appeals affirmed. Liggett v. Young, 851 N.E.2d 968 (Ind. Ct. App. 2006).

Among Liggett's issues on appeal, we find one to be dispositive: "Whether the trial judge erred in finding no genuine issue of material fact with respect to the enforceability of a contract drafted and entered into between an attorney and his builder/client." Appellant's Br. at 1.

Before addressing this issue, however, we note the somewhat unconventional procedural posture of this case in the trial court. The motion for partial summary judgment filed by the Youngs was supported only by Dean Young's affidavit referring to the parties' building contract, asserting full payment, and attaching the contract as an exhibit. Opposing the Youngs' motion, Liggett's affidavit asserted the existence of unpaid additional labor and materials from change orders; attached exhibits consisting of plans and specifications related to the construction; and asserted that at the time of the contract, Dean Young was serving as Liggett's attorney and had assured Liggett that "that there would be no problems" as a result of Young's "dual status" as Liggett's attorney and party to the contract. Appellant's App'x at 59. Finding it undisputed that "the Youngs have paid the full price called for under the contract," the trial court granted the Youngs' motion for partial summary judgment. The court did not address Liggett's assertions regarding the fact or implications of Dean Young's "dual status" as both a contracting party with and lawyer for Liggett. Following the appointment of a special judge, the appearance of new counsel for Liggett, and a series of further pleadings, Liggett filed a motion for summary judgment. Finding that it was "in effect" a motion to reconsider the previous ruling on the Youngs' motion for partial summary judgment, Appellant's App'x at 12, the trial court undertook such reconsideration and addressed the new arguments presented by Liggett, but declared itself to be "constrained to review the record and evidence as same existed" on the date of the initial order granting partial summary judgment, and did not consider any new designated evidence submitted

2

to support or oppose Liggett's motion for summary judgment. With a detailed explanatory order, the trial court denied Liggett's summary judgment and affirmed the previous order granting the Youngs' motion seeking partial summary judgment as to Liggett's claims against the Youngs.

## 1. Professional Conduct Rule 1.8

Liggett's appeal contends in part that the Youngs failed to carry their burden on summary judgment to prove that the construction contract was not void by reason of Indiana Professional Conduct Rule 1.8, which restricts an attorney's ability to engage in transactions with the attorney's client. Liggett urges that Dean Young violated this rule by drafting the construction contract for the project, and that attorney/client transactions are presumptively invalid as the product of undue influence. In response, the Youngs contend (a) that Liggett's designation of evidence on summary judgment, claiming an entitlement to receive the contract price plus an additional amount, is inconsistent with his claim that the contract should be found void, and (b) that the construction contract was a standard commercial transaction to which Rule 1.8 does not apply.

Summary judgment is appropriate only when the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C); Biddle v. BAA Indianapolis, LLC, 860 N.E.2d 570, 575 (Ind. 2007); Gunkel v. Renovations, Inc., 822 N.E.2d 150, 152 (Ind. 2005); Worman Enterprises, Inc. v. Boone County Solid Waste Mgmt. Dist., 805 N.E.2d 369, 373 (Ind. 2004). We construe all facts and reasonable inferences in favor of the non-moving party. Gunkel, 822 N.E.2d at 152. Furthermore, we carefully review summary judgment decisions to ensure a party is not improperly denied its day in court. Id.; Reeder v. Harper, 788 N.E.2d 1236, 1240 (Ind. 2003); St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele, 766 N.E.2d 699, 702 (Ind. 2002).

At all relevant times (from the contract date of July 2, 1999, through the date the Youngs filed their complaint, April 2, 2001), Rule 1.8(a) of the Indiana Rules of Professional Conduct provided as follows:

> (a)    A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

3

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.[1]

The Comment to Rule 1.8, as relevant to subsection (a), emphasized the general principle that "all transactions between client and lawyer should be fair and reasonable to the client," and added that, "[i]n such transactions a review by independent counsel on behalf of the client is often advisable." Ind. Prof. Cond. R. 1.8 cmt. (1999). But the Comment also noted an exception:

> Paragraph (a) does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions, the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable.

*Id.*[2] The parties disagree regarding whether their transaction falls within this "standard commer-

---

[1] This provision was slightly revised effective January 1, 2005, as part of the broad revision of the Indiana Rules of Professional Conduct following the American Bar Association's 2002 changes in its Model Rules of Professional Conduct. In its present form, Indiana's Rule 1.8(a) is identical to its predecessor except as to subsections (2) and (3), which now state:

(2) the client *is advised in writing of the desirability of seeking and* is given a reasonable opportunity to seek the advice of independent *legal* counsel on the transaction; and

(3) the client gives *informed* consent, in a writing *signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction .*

Ind. Prof. Cond. R. 1.8(a) (2006) (emphasis added to identify new language).

[2] Following the 2002 revision of the ABA Model Rules, the Comment was substantially rewritten. In relevant part, it now provides:

[1] A lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property or financial transaction with a client, for example, a loan or sales transaction or a lawyer investment on behalf of a client. The requirements of paragraph (a) must be met even when the transaction is not closely related to the subject matter of the representation, as when a lawyer drafting a will for a client learns that the client needs money for unrelated expenses and offers to make a loan to the client. The Rule applies to lawyers engaged in the sale of goods or services related to the practice of law, for example, the sale of title insurance or investment services to existing clients of the lawyer's legal practice. See Rule 5.7. It also applies to lawyers purchasing property from estates they represent. . . . In addition, the Rule does not apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities' services. In such trans-

4

cial transaction" exception. The Youngs argue that they fall within the exception because the transaction involves a product and/or service that Liggett, a building contractor, generally markets to others. Liggett contends that it does not apply because the dispute centers on the interpretation of the construction contract drafted by his lawyer, Dean Young.

Regardless whether this transaction does not qualify as a standard commercial transaction and thus subjects Dean Young to the requirements of Rule 1.8(a), the Rules of Professional Conduct have limited application outside of the attorney disciplinary process. On the dates relevant to this case, the Preamble to the Indiana Rules of Professional Conduct stated in part:

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability, but reference to these rules as evidence of the applicable standard of care is not prohibited. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforce-

---

actions, the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable.

[2] Paragraph (a)(1) requires that the transaction itself be fair to the client and that its essential terms be communicated to the client, in writing, in a manner that can be reasonably understood. Paragraph (a)(2) requires that the client also be advised, in writing, of the desirability of seeking the advice of independent legal counsel. It also requires that the client be given a reasonable opportunity to obtain such advice. Paragraph (a)(3) requires that the lawyer obtain the client's informed consent, in a writing signed by the client, both to the essential terms of the transaction and to the lawyer's role. When necessary, the lawyer should discuss both the material risks of the proposed transaction, including any risk presented by the lawyer's involvement, and the existence of reasonably available alternatives and should explain why the advice of independent legal counsel is desirable. See Rule 1.0(e) (definition of informed consent).

[3] The risk to a client is greatest when the client expects the lawyer to represent the client in the transaction itself or when the lawyer's financial interest otherwise poses a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's financial interest in the transaction. Here the lawyer's role requires that the lawyer must comply, not only with the requirements of paragraph (a), but also with the requirements of Rule 1.7. Under that Rule, the lawyer must disclose the risks associated with the lawyer's dual role as both legal adviser and participant in the transaction, such as the risk that the lawyer will structure the transaction or give legal advice in a way that favors the lawyer's interests at the expense of the client. Moreover, the lawyer must obtain the client's informed consent. In some cases, the lawyer's interest may be such that Rule 1.7 will preclude the lawyer from seeking the client's consent to the transaction.

Ind. Prof. Cond. R. 1.8 cmt. (2006).

ment of the Rule.

Ind. R. Prof. Cond. Preamble (1999-2004).[3]

Prior decisions are inconsistent regarding whether this language in the pre-2005 Preamble should be applied to preclude resort to Rule 1.8(a) in resolving the issue of civil liability. Two opinions have indicated that violation of the Rules of Professional Conduct *may* serve as a basis for civil liability. *See* Trotter v. Nelson, 684 N.E.2d 1150, 1153 (Ind. 1997) ("The Rules at issue . . . are explicit judicial declarations of Indiana public policy and, akin to contravening a statute, agreements in violation of these rules are unenforceable."); Picadilly, Inc., v. Raikos, 582 N.E.2d 338, 342 (Ind. 1991) ("An attorney who breaches any of these duties may face both disciplinary action and a legal malpractice claim."). But neither of these cases address the above-quoted Preamble language. On the other hand, in Sanders v. Townsend, 582 N.E.2d 355 (Ind. 1991), this Court explicitly declared that this language in the Preamble "make[s] it clear that [the Rules of Professional Conduct] do not purport to create or describe any civil liability …" *Id.* at 359.

In Sanders, the clients sued their lawyer, asserting that the lawyer breached fiduciary duties by coercing them into an inadequate settlement. This Court affirmed summary judgment for the lawyer, noting that the client's contention was that the lawyer "breached his fiduciary duties to them . . . in violation of the Indiana Code of Professional Responsibility …" *Id.* at 358-59. We held "that to subject attorneys to suit for constructive fraud based on a violation of the fiduciary duties that are regulated under the Rules of Professional Conduct . . . would create unreasonable, unwarranted, and cumulative exposure to civil liability." *Id.* at 359. We infer from the reference to "cumulative exposure to civil liability" that Sanders stands for the proposition that, while civil liability in damages may not be predicated on a claimed violation of a specific professional conduct rule relating to fiduciary duties, a client nevertheless may seek damages if the attorney's conduct constitutes a breach of fiduciary duty at common law.[4]

---

[3] The 2005 revisions to this language included the addition of the sentence: "Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct." Ind. R. Prof. Cond. pmbl. ¶ 20, effective January 1, 2005.

[4] We reach this conclusion notwithstanding the fact that the Court of Appeals opinion in Sanders appears to treat the fiduciary duty allegedly breached as arising from both common law and from the violation of the professional conduct rules. Our decision in Sanders affirmed summary judgment for the lawyer "in all

We conclude that this holding from <u>Sanders</u> prevails over any statements to the contrary in <u>Picadilly</u> and <u>Trotter</u> because of the language of the Preamble and its express consideration in <u>Sanders</u> and because there exists an independent common law basis, apart from violation of Rule 1.8, on which a client may seek recourse in damages.

## 2. Common Law Attorney-Client Fiduciary Duty

Claims involving separate attorney-client transactions have long been governed by principles of Indiana law that guide the resolution of this appeal.

> Indiana case law recognizes that transactions entered into during the existence of a fiduciary relationship are presumptively invalid as the product of undue influence. Transactions between an attorney and client are presumed to be fraudulent, so that the attorney has the burden of proving the fairness and honesty thereof.

<u>Matter of Smith</u>, 572 N.E.2d 1280, 1285 (Ind. 1991). *See also* <u>Sweeny v. Vierbuchen</u>, 224 Ind. 341, 348, 66 N.E.2d 764, 766-767 (1946); <u>Olds v. Hitzemann</u>, 220 Ind. 300, 305, 42 N.E.2d 35, 37-38 (1942); <u>Lucas v. Frazee</u>, 471 N.E.2d 1163, 1166-67 (Ind. Ct. App. 1984); <u>Briggs v. Clinton County Bank & Trust Co.</u>, 452 N.E.2d 989, 999 (Ind. Ct. App. 1983); <u>Blasche v. Himelick</u>, 140 Ind. App. 255, 259-260, 210 N.E.2d 378, 381 (1965); <u>Castle v. Kroeger</u>, 111 Ind. App. 43, 53-54, 39 N.E.2d 459, 463-464 (1942).

This statement of general principle does not endeavor to specifically address standard commercial transactions between a lawyer and a client in which the lawyer does not render legal services. But, parallel to the "standard commercial transaction" exception noted in the Comment to Professional Conduct Rule 1.8, such transactions are likewise generally considered as not subject to the common law prohibition against attorney-client transactions. *See* Section 126 of the Restatement (Third) of The Law Governing Lawyers,[5] particularly comment (c).

---

respects" rather than to permit the clients to proceed only on a claim of breach of common law fiduciary duty, presumably because this Court determined that the clients' claim were predicated on the alleged rule violation. *Id.* at 358-59.

[5] Restatement Section 126 states:

> A lawyer may not participate in a business or financial transaction with a client, except a standard commercial transaction in which the lawyer does not render legal services, unless:
> (1) the client has adequate information about the terms of the transaction and the risks presented

During the trial court's consideration of the Youngs' motion for partial summary judgment, and Liggett's later summary judgment motion that was treated as a motion to reconsider the Youngs' motion, the designated matters considered by the court did not expressly assert that Dean Young had prepared the contract in question. The parties' construction contract, however, was in the form of a pre-printed "Building, Construction and No-Lien Agreement" approved by the Indiana State Bar Association, the header of which declared: "the selection of a form of instrument, filling in blank spaces, striking out provisions and insertion of special clauses, constitutes the practice of law and should be done by a lawyer." Appellant's App'x at 32, 51. And Liggett's affidavit in opposition to the Youngs' motion for partial summary judgment specifically asserts that Dean Young drafted Paragraph 12 of the construction contract, Appellant's App'x at 59, which assertion the Youngs do not dispute. Liggett's affidavit also asserted that at the time the contract was entered, Dean Young was serving "as Liggett's personal attorney." Appellant's App'x at 59. The Youngs did not respond to that assertion in the summary judgment proceeding, and acknowledge that at the time of the contract's execution, Dean Young "was acting as the attorney for Liggett on an unrelated matter." Appellees' Br. at 2.

The designated matter considered by the trial court does not include any evidence showing that Dean Young's transaction with his client Ronald Liggett was fair and honest, or was a standard commercial transaction that should be exempted from the common law presumption of invalidity due to undue influence. Nor do the Youngs designate any materials to overcome the

> by the lawyer's involvement in it;
> (2) the terms and circumstances of the transaction are fair and reasonable to the client; and
> (3) the client consents to the lawyer's role in the transaction under the limitations and conditions provided in § 122 after being encouraged, and given a reasonable opportunity, to seek independent legal advice concerning the transaction.
>
> Restatement (Third) of The Law Governing Lawyers, § 126 (2000). Comment (c) adds:
>
> *c. Standard commercial transactions.* The requirements of informed consent and objective fairness are satisfied when lawyer and client enter into standard commercial transactions in the regular course of business of the client, involving a product or service as to which the lawyer provides no legal services. This Section therefore does not apply to such transactions. Standard commercial transactions are those regularly entered into between the client and the general public, typically in which the terms and conditions are the same for all customers. In such circumstances, the client's interests in the transaction with the lawyer need no special protection. On the other hand, where a lawyer engages in the sale of goods or services ancillary to the practice of law, for example, the sale of title insurance, the requirements of this Section do apply.
>
> *Id*. at cmt (c).

presumption. And while Liggett's initial opposition to the Youngs' partial summary judgment motion did not expressly assert any claim of presumed invalidity, unfairness, or dishonesty, his supporting affidavit did assert Dean Young's dual status as both Liggett's attorney and party to the contract. In Liggett's subsequent motion for summary judgment (which the court treated as a motion for reconsideration), he expressly raised issues of "illegality and constructive fraud." Appellant's App'x at 97. Noting both Dean Young's dual status and that Young was responsible for drafting the contract, Liggett asserted that Rule 1.8(a) applies to render the contract void as an illegal contract, *id.* at 108-110, or as a constructive fraud, *id.* at 110-111.

While excluding the further evidentiary materials supporting and opposing Liggett's motion for summary judgment, the trial court did acknowledge that "Liggett contends that the written contract should be declared void based upon the fact that Young was serving as Liggett's attorney on unrelated matters." Addressing this claim, the trial court found that (a) in responding to the Youngs' summary judgment motion, Liggett had not expressly asserted that the contract was void but had affirmed the validity of the contract and claimed that he had completed his contractual obligations; and that (b) even "if Liggett had made a timely challenge to the validity of the written contract, such an argument would fail." After quoting the "standard commercial transactions" exclusion described in the Comment to Rule 1.8., App'x at 16-17, the trial court concluded:

> 26. The evidence before the Court establishes that Liggett was a building contractor. With respect to the subject matter of this case, the Youngs were the clients and Liggett was the professional. Consequently, Rule 1.8 of the Indiana rules of Professional Conduct does not apply.

Appellant's App'x at 16-17.

As a preliminary matter, we observe that Liggett did not, by asserting completion of his obligations under the contract, forego his claim that the construction contract was void due to Dean Young's dual status in the transaction. A party may plead inconsistent, alternative claims or theories. Ind. Trial Rule 8(E)(2); Reeder v. Harper, 788 N.E.2d 1236, 1243 n.5 (Ind. 2003); Cahoon v. Cummings, 734 N.E.2d 535, 542 (Ind. 2000); Foster v. Evergreen Healthcare, Inc., 716 N.E.2d 19, 28 (Ind. Ct. App. 1999). Of greater significance, however, is that Liggett's claims against the Youngs are for materials and labor not included in the original base construc-

9

tion contract but result instead from additional items that Liggett claims were performed at the Youngs' request. These claims derive from custom language drafted by Young and inserted sub-paragraph (b) in paragraph "12. ADDITIONAL COVENANTS" of the preprinted contract. This sub-paragraph 12(b) states: "(b) Subject to changes which from time to time may be made following construction [sic] between Builders and Owners, and, where necessary, following consultation with Owners' construction/mortgage lenders." Appellant's App'x at 34.

With respect to Liggett's contentions regarding the dual status of Dean Young as both a party to the contract with Liggett and as Liggett's attorney at the time, we conclude that the designated evidence on the Youngs' motion for partial summary judgment did not affirmatively establish the absence of a genuine issue of material fact as to whether, in light of Dean Young's fiduciary relationship as Liggett's attorney, the building contract transaction was fair and honest so as to overcome the common law presumption that the contract was fraudulent. Nor was there designated matter showing that the transaction, the centerpiece of which was a contract allegedly prepared and modified by attorney Dean Young, should as a matter of law be treated as a standard commercial transaction to which the common law presumption did not apply. Under such circumstances, the Youngs are not entitled to partial summary judgment foreclosing Liggett's claims against them.

Having previously granted transfer, thereby automatically vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A), we now reverse both (a) the trial court's final judgment in favor of the Youngs and against Liggett as to all of Liggett's claims against the Youngs and (b) the grant of the Youngs' motion for partial summary judgment as to Liggett's claims. This cause is remanded to the trial court for resolution of the remaining claims of each party in a manner consistent with this opinion.

Shepard, C.J., and Sullivan and Rucker, JJ., concur. Boehm, J., concurs in result with separate opinion.

10

**Boehm, Justice, concurring in result.**

The dispositive issue in this appeal is whether the contract provision bars Liggett's claim to be compensated for unwritten change orders. I agree with the majority that summary judgment in favor of the Youngs must be reversed, and this case should be remanded for trial.

I think that despite its odd procedural posture, this case boils down to some familiar and relatively simple points. At a time when Dean Young was acting as Liggett's attorney, the Youngs contracted for Liggett to build their home. Liggett had no separate attorney. Liggett claims that the parties agreed to oral change orders and that a variety of change orders added substantially to the cost of the project. He seeks compensation for those. The Youngs respond to Liggett's claims by invoking the provision in their written contract that prohibited unwritten change orders.

As I see it, this is rather simply resolved without regard to whether the written contract was "void" as "fraudulent" or not "fair and honest." First, this is in my view plainly not a "standard" contract contemplated by the exception to Rule of Professional Responsibility 1.8. That exception is designed to permit ordinary, truly "standard" transactions (e.g., a lawyer who represents a telephone company may get telephone service, and a lawyer who represents a bank may have its credit card). It permits these transactions because they are entered into by many others on the same terms, making them presumptively fair. In any event, except for widely used phone service agreements and the like, the exception applies only if the lawyer-consumer does not draft the contract. This exception does not apply to a unique document prepared by the lawyer in question, which is what we have here, unless the other conditions listed in section 126 of the Restatement (Third) of the Law Governing Lawyers are met. These conditions require that the client (Liggett) be aware of the risks, the terms of the transaction be fair and reasonable to the client, and the client be encouraged to seek independent legal advice. This doctrine is one of substantive law, not one derived, except perhaps tangentially, from the Rules of Professional Responsibility.[6]

---

[6] I agree that the Rules of Professional Responsibility do not of themselves create civil liability. The Preamble so provides. But the Preamble also provides that the Rules establish standards of conduct that may be evidence of a breach of the standard of conduct required under other legal doctrines. Although this appears explicitly for the first time in the 2005 Preamble to the Rules, I believe it is a statement of a rule

The "transaction" at issue as to Liggett's claims is not the original contract, which on its face seems to me to be relatively ordinary and not "unfair." Rather, the change orders are the "transactions" for which Liggett seeks compensation. The Youngs do not deny that changes were requested, and seek to invoke a provision in the contract Dean Young prepared that requires change requests be in writing. The Youngs thus contend that a change order that they made orally and that caused additional cost to the contractor could be put in place without adjustment of the contractor's compensation. That, on its face, is not "fair and reasonable" to the contractor who is also the client. And if there is any doubt on that point it should be resolved against the attorney who elects to deal with a client. Accordingly, the lawyer is precluded from enforcing this provision against the client. This is simply an application of the basic principle that a fiduciary who deals with his beneficiary must look out for the beneficiary's interests above his own. See In re Good, 632 N.E.2d 719, 721 (Ind. 1994) ("Transactions entered into during the existence of a fiduciary relationship are presumptively invalid as the product of undue influence. Transactions between an attorney and client are presumed to be fraudulent, and the attorney has the burden of proving that they were fair and honest." (citing In re Smith, 572 N.E.2d 1280, 1285 (Ind. 1991))). As I see it, under this doctrine, the Youngs' requesting changes and Dean Young's failure to caution against any changes not in writing leaves any resulting loss in the lawyer's lap, not the client's.

It seems that there is no dispute of material fact that the Youngs requested changes, but the amount of damages, if any, from these changes is not established. Accordingly, if the trier of fact accepts Liggett's contentions that he incurred additional expenses as a result of changes in the home made with the Youngs' prior knowledge after the initial contract, Liggett is entitled to recover the fair compensation attributable to those changes, notwithstanding any provision in the attorney's contract requiring change orders to be in writing. Whether the facts are as Liggett alleges is a matter for trial.

---

of common law that long predated that preamble and the transactions in this case. See Daniel L. Draisen, The Model Rules of Professional Conduct and Their Relationship to Legal Malpractice Actions: A Practical Approach to the Use of the Rules, 21 J. Legal Prof. 67, 70–71 & n.12 (1996) (describing a "large majority of courts [that] treat professional ethical standards as evidence of the common law duty of care").