FILED

Jan 23 2018, 7:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Robert J. Palmer
Wendell W. Walsh
May Oberfell Lorber
Mishawaka, Indiana

Jonathan S. Quinn
Andrew G. May
Neal, Gerber & Eisenberg LLP
Chicago, Illinois

ATTORNEY FOR APPELLEES

Patrick D. Murphy
Murphy Rice, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CRIT Corp. and Peoplelink, LLC,

*Appellants-Plaintiffs,*

v.

William J. Wilkinson, Hoosier Investments, LLC, Peter G. Trybula, and Barnes & Thornburg LLP,[1]

*Appellees-Defendants.*

January 23, 2018

Court of Appeals Case No. 71A03-1705-PL-982

Appeal from the
St. Joseph Superior Court

The Honorable
Jenny Pitts Manier, Judge

Trial Court Cause No. 71D05-1607-PL-240

---

[1] The claims against William J. Wilkinson ("Wilkinson") and Hoosier Investments, LLC were dismissed by the trial court. However, pursuant to Indiana Appellate Rule 17(A), "[a] party of record in the trial court . . . shall be a party on appeal."

**Kirsch, Judge.**

[1] CRIT Corp. and Peoplelink, LLC (together, "Peoplelink") appeal the trial court's orders dismissing their complaint against attorney Peter G. Trybula and his employer Barnes & Thornburg LLP (together, "B&T") for breach of fiduciary duty and for legal malpractice. Peoplelink raises the following restated issues for our review:

> I. Whether the trial court erred in dismissing Peoplelink's initial complaint, which alleged breach of fiduciary duty arising from an alleged conflict of interest; and
>
> II. Whether the trial court erred in dismissing Peoplelink's second amended complaint, which alleged legal malpractice, fraud, and constructive fraud arising from the same alleged conflict of interest.

[2] We affirm.

## Facts and Procedural History

[3] Peoplelink is a nationwide staffing solutions business based in South Bend, Indiana that matches temporary employees with companies in need of short-term labor. CRIT Corp. is a holding company that wholly owns Peoplelink. From 2001 to 2011, Peoplelink was privately owned by the Wilkinson family. In 2011, the Wilkinson family sold a controlling interest to CRIT, but William Wilkinson ("Wilkinson") continued to serve as Peoplelink's President and Chief Executive Officer until December 31, 2015. Peter G. Trybula ("Trybula") is an attorney with the law firm of B&T. When Wilkinson decided to part ways

with Peoplelink, Trybula and B&T represented Wilkinson and acted on his behalf in connection with the written agreements, including the non-compete between Wilkinson and Peoplelink, whereby Wilkinson separated from the company and transferred his interest in Peoplelink to CRIT. Peoplelink and CRIT were represented by their own legal counsel (not by B&T) in this "highly negotiated transaction that involved sophisticated parties and counsel." *Appellants' App. Vol. II* at 172.

[4] After Wilkinson's departure, Peoplelink agreed to continue using B&T and Trybula as one of its key company counsel. *Id*. at 178. B&T "continued to be actively involved in Peoplelink's legal affairs, advising Peoplelink on a variety of significant matters, including a possible M&A transaction, a dispute regarding a prior M&A transaction, the renewal of an existing banking facility, and other ordinary course matters." *Id*. B&T simultaneously represented Wilkinson in connection with his "proposed acquisition" of Ohio-based companies, Just in Time and HR Business (together, "JIT"). *Id*. at 181. Upon Wilkinson's request, B&T acted "on behalf of Wilkinson" and as his attorney in connection with his effort to acquire JIT. *Id*. at 173, 182.

[5] On July 1, 2016, the President and Chief Operating Officer of Peoplelink, Jay Mattern ("Mattern"), received an e-mail from Trybula. The e-mail was intended to be sent to Wilkinson and concerned the acquisition of an Ohio-based staffing solutions company located just 250 miles from Peoplelink's headquarters in South Bend. Trybula immediately attempted to recall the email he had unintentionally sent to Mattern. Attached to the e-mail that Trybula

inadvertently sent to Mattern were draft copies of the transaction documents for the acquisition of JIT by an investment vehicle owned and controlled by Wilkinson. The transaction documents reflected that JIT -- like Peoplelink itself – provided temporary staffing solutions. *Id*. at 65, 78-144. Trybula's e-mail was sent less than seven months after Wilkinson -- while represented by B&T -- agreed to refrain from engaging in the staffing services industry.

[6] On July 13, 2016, Peoplelink filed a complaint against Wilkinson for anticipatory breach of contract, alleging that Wilkinson breached his non-compete agreements by pursuing a proposed acquisition of JIT.[2] Peoplelink also filed a complaint against B&T, alleging breach of fiduciary duty related to its representation of Wilkinson in his proposed acquisition of JIT. The complaint specifically alleged that B&T was liable for breaching its fiduciary duty by "concurrently representing Peoplelink and Wilkinson in matters in which . . . B&T [has] a conflict of interest." *Appellants' App. Vol. II* at 73. B&T moved to dismiss the fiduciary duty claim pursuant to Indiana Trial Rules 12(B)(1) and 12(B)(6). After a hearing, the trial court entered an order on November 21, 2016, granting dismissal under both rules. In the order, the trial court noted that, "in considering the impropriety of the alleged conduct at issue, Peoplelink itself [made] reference to the standard articulated in Rule 1.7" of the

---

[2] The trial court dismissed CRIT Corp. and Peoplelink, LLC's ("Peoplelink") declaratory judgment claims against Wilkinson and Hoosier Investments, LLC and granted summary judgment for Hoosier Investments, LLC on the remaining contract claims against it. *Appellees' App. Vol. II* at 105. After Wilkinson filed a motion to dismiss the remaining claims against him for anticipatory breach of contract, Peoplelink settled with Wilkinson, and the claims against him were dismissed. *Id.* at 106-11.

Indiana Rules of Professional Conduct, which concerns lawyer conflicts of interest. *Id*. at 18. At the hearing on the motion to dismiss, Peoplelink had argued that "there has been a violation of Rule 1.7" and that "Rule 1.7 prohibits this precise conduct." *Hrg. Tr. Vol. II* at 19, 31.

[7] After the dismissal of its fiduciary duty claim based on an alleged conflict of interest, Peoplelink filed a second amended complaint in which it alleged B&T had a conflict of interest and breached a fiduciary duty and, therefore, was liable for legal malpractice, fraud, and constructive fraud. The complaint alleged B&T violated "fiduciary and ethical obligations" and breached a "fiduciary duty," which "misconduct also violated Rule 1.7 of the Indiana Rules of Professional Conduct." *Appellants' App. Vol. II* at 187-88, 191. The second amended complaint was based on "the same operative facts" as the initial complaint. *Hrg. Tr. Vol. II* at 47, 64, 74.

[8] B&T moved to dismiss the second amended complaint pursuant to Indiana Trial Rules 9(B), 12(B)(1), and 12(B)(6). A hearing was held, and on March 22, 2017, the trial court entered an order dismissing the second amended complaint and stating in part: "After a great deal of consideration and review of the materials filed and case law and other authority cited, the Court now Grants the Motion to Dismiss filed by [B&T]." *Appellants' App. Vol. II* at 20. On April 4, 2017, the trial court entered Final Judgment for B&T pursuant to Trial Rule 54(B). Peoplelink now appeals.

# Discussion and Decision

[9] A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it.[3] *Magic Circle Corp. v. Crowe Horwath, LLP*, 72 N.E.3d 919, 922 (Ind. Ct. App. 2017). Our review of a trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6) is de novo. *Id*. When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id*. Motions to dismiss are properly granted only "when the allegations present no possible set of facts upon which the complainant can recover." *Id*. at 922-23 (quotations omitted).

# I.    Initial Complaint

[10] Peoplelink argues that its initial complaint stated a viable claim for breach of fiduciary duty against B&T, and the trial court erred when it dismissed the initial complaint. Peoplelink claims that B&T had a conflict of interest in representing Peoplelink and, at the same time, providing legal advice to Wilkinson on a matter that was adverse to Peoplelink's interests. Peoplelink asserts that, in dismissing the initial complaint, the trial court misapplied our Supreme Court's case of *Sanders v. Townsend*, 582 N.E.2d 355 (Ind. 1991) and that *Sanders* does not preclude claims for breaches of fiduciary duty merely

---

[3] We note that the trial court dismissed Peoplelink's complaint pursuant to Indiana Trial Rules 12(B)(1) and 12(B)(6). However, in its Appellants' Brief, Peoplelink only discusses the standard of review for a dismissal under Trial Rule 12(B)(6). We, therefore, also only refer to the standard of review for that rule.

because they violate a rule of professional conduct. Peoplelink alleges that its allegation of a breach of fiduciary duty is based on an independent common law basis, and under *Liggett v. Young*, 877 N.E.2d 178 (Ind. 2007), its claim is not barred.

[11] In *Sanders v. Townsend*, an attorney was sued by his clients, who alleged that he "breached his fiduciary duties to them by coercing them into a settlement they considered inadequate," in violation of the Indiana Rules of Professional Conduct. *Id*. at 358-59. On appeal after summary judgment was granted in favor of the attorney, our Supreme Court affirmed the trial court, holding "that to subject attorneys to suit for constructive fraud based on a violation of the fiduciary duties that are regulated under the Rules of Professional Conduct . . . would create unreasonable, unwarranted, and cumulative exposure to civil liability." *Id*. at 359. In reaching its decision, the Supreme Court relied in part on the preamble to the Rules of Professional Conduct and stated that the preamble makes it "clear that [the Rules] provisions do not purport to create or describe any civil liability" and they "are not designed to be a basis for civil liability." *Id*. The Supreme Court also asserted its exclusive jurisdiction to investigate, process, and apply "its Rules through its Disciplinary Commission." *Id*.

[12] *Liggett v. Young*, involved a contract dispute arising from Liggett's construction of a private residence for his attorney, defendant Young and, therefore, concerned "the common law prohibition against attorney-client transactions," involving transactions between a lawyer and client "in which the lawyer does

not render legal services." *Id*. at 179, 184. Our Supreme Court reaffirmed *Sanders* and held that liability against an attorney "may not be predicated on a claimed violation of a specific professional conduct rule relating to fiduciary duties." *Id*. at 183. It further held that Indiana law allows a client to "seek damages if the attorney's conduct constitutes a breach of fiduciary duty at common law," but only when there exists an "independent common law basis" that is "apart from" a violation of the Rules of Professional Conduct. *Id*. The *Liggett* court then noted that, apart from the Rules of Professional Conduct, Indiana common law has long recognized that such "separate attorney-client transactions" that are "entered into during the existence of a fiduciary relationship are presumptively invalid as the product of undue influence." *Id*. at 183-84. The Supreme Court acknowledged a long line of Indiana cases supporting this presumption and additionally cited to a section of the Restatement of The Law Governing Lawyers, all of which addressed the precise behavior alleged to be a breach of fiduciary duty in *Liggett*, and which constituted an independent common law basis apart from the violation of the Rules of Professional Conduct. *Id*. at 184.

[13] Here, in its initial complaint, Peoplelink raised one claim against B&T, alleging that B&T "breached [its] fiduciary duties by, among other things, concurrently representing Peoplelink and Wilkinson in matters in which Trybula and B&T [had] a conflict of interest" and in doing so "elevated the interests of Wilkinson above the interest of Peoplelink to the detriment of Peoplelink." *Appellants' App. Vol. II* at 73. An Indiana attorney's duty to not represent a client if the

representation involves a concurrent conflict of interest is found in Rules 1.7 and 1.8 of the Indiana Rules of Professional Conduct. Peoplelink's allegation of breach of fiduciary duty, therefore, was based on a violation of the fiduciary duties regulated by the Rules of Professional Conduct, which both *Sanders* and *Liggett* preclude.

[14] While Peoplelink urges that its allegation has an independent common law basis apart from the violation of Rules 1.7 and 1.8, as *Liggett* requires, we find that Peoplelink's initial complaint did not establish an independent common law basis for its claim against B&T. In support of its position, Peoplelink relies on *Blasche v. Himelick*, 140 Ind. App. 255, 210 N.E.2d 378 (1965) and *Bell v. Clark*, 653 N.E.2d 483 (Ind. Ct. App. 1995) as supporting an independent common law basis for its allegation against B&T. However, both of those cases involved attorney self-dealing, which is not the basis of Peoplelink's allegation of breach of fiduciary duty against B&T. *See Bell*, 653 N.E.2d at 490 (finding legal malpractice based on claim by general partner against attorney for partnership -- where attorney was also a limited partner in the partnership, had adverse financial interests, and double-billed the general partner and partnership for attorney fees – based on common law that provides, "A lawyer commits a breach of trust going to the very essence of the attorney-client relationship when he takes a position adverse to that of his client, or former client, in a business transaction. Attorneys must not allow their private interests to conflict with those of their client." (citations omitted)); *Blasche*, 140 Ind. App. at 257-58, 210 N.E.2d at 379-80 (involving action by heirs of deceased grantor

"attacking the validity of a certain deed by reason of fraud and undue influence" where the defendant-attorney prepared and procured the deed transferring the real estate to himself instead of the client-grantor's heirs). Peoplelink also cites to *Price Waicukauski & Riley, LLC v. Murray*, 47 F. Supp. 3d 810 (S.D. Ind. 2014) for support of an independent common law basis, but in that case no breach of fiduciary duty claim was alleged, and therefore, the district court did not analyze any such claim either based in the common law or on a violation of the Rules of Professional Conduct and did not have the opportunity to determine if any such claim fit into the exception carved out in *Liggett*. *Price*, 47 F. Supp. 3d at 824.

[15] Additionally, Peoplelink cites to several cases from other jurisdictions as support for an independent common law basis for its claim. The first is *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277 (Pa. 1992), which is a case that was handed down prior to *Liggett* and involved a denial of injunctive relief against attorneys for misuse of a former client's confidences while representing another client in "substantially related" matters. *Id*. at 1279, 1283-84, 1285. In contrast, in the present case, Peoplelink never alleged in its initial complaint that B&T misused client confidences received from Peoplelink, or that B&T represented Peoplelink and Wilkinson in substantially related matters. *See Appellants' App. Vol. II* at 73-74. Additionally, *Liggett* did not involve a request for injunctive relief, but instead, held that Indiana law allows a client to "*seek damages* if the attorney's conduct constitutes a breach of fiduciary duty at common law," but only when an independent common law

basis, apart from a violation of the Rules of Professional Conduct, exists. *Liggett*, 877 N.E.2d at 183 (emphasis added). Peoplelink next relies on *Airgas, Inc. v. Cravath, Swaine & Moore LLP*, No. 10-612, 2010 WL 3046586 (E.D. Pa. Aug. 3, 2010), which involved a law firm representing one client in a possible merger with a second client and also representing the first client in a lawsuit against the second client when the hostile takeover failed. *Id.* at *1. That case is distinguishable from the present case because, here, Peoplelink did not allege that B&T represented Wilkinson in a lawsuit or any other matter brought against Peoplelink. Lastly, Peoplelink cites to *Ulico Cas. Co. v. Wilson, Elser, Moshowitz, Edelman & Dicker*, 843 N.Y.S.2d 749 (N.Y. Sup. Ct. 2007), *aff'd as modified by* 56 A.D.3d 1 (N.Y. App. Div. 2008), but cites to the portion of the opinion that was subsequently modified on appeal; specifically, on appeal, the court granted defendant's motion for partial summary judgment to the extent of dismissing the claim of breach of fiduciary duty. Additionally, that case dealt with the law firm's dual representation of two clients in claims that implicated insurance policies issued by both clients, *id.* at *8; here, there was no allegation that B&T represented both Peoplelink and Wilkinson in the same matter.

[16] In support of its argument, Peoplelink also points to the language in the Preamble of the Rules of Professional Conduct that states, "[A] lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct." Peoplelink asserts that the trial court ignored this language in its dismissal of its initial complaint. However, although this language does appear in the Preamble, the text also states that "[v]iolation of a Rule should not itself

give rise to a cause of action against a lawyer" and "[the Rules] are not designed to be a basis for civil liability." Ind. Professional Conduct Rule Preamble 20. Even though the Preamble states that a violation of a Rule may be used as evidence of breach of standard of conduct, pursuant to *Liggett*, an independent common law basis separate from the rule violation must be shown.

[17] In this case, Peoplelink's allegation of breach of fiduciary duty was only based on a violation of the Rules of Professional Conduct, and no independent common law basis apart from the rule violation was shown to exist for Peoplelink's allegation. We, therefore, conclude that the trial court did not err when it dismissed Peoplelink's initial complaint alleging breach of fiduciary duty.

## II. Second Amended Complaint

[18] Peoplelink next asserts that, in its second amended complaint, it stated a viable claim for legal malpractice on the basis that B&T's professional competency fell below the standard of care possessed by members of the legal profession by rendering legal services when they were precluded from doing so due to a conflict of interest and that the trial court erred when it dismissed its second amended complaint for failure to state a claim. Peoplelink asserts that claims for legal malpractice may be premised on circumstances where a lawyer breaches his duty of loyalty to a client by representing an interest adverse to his client. It further contends that it adequately alleged causation and damages for its legal malpractice claim. Peoplelink also argues that the trial court erred in

dismissing Peoplelink's claims of fraud and constructive fraud because they were pled with sufficient particularity. We disagree.

[19] Peoplelink's second amended complaint alleged B&T had a conflict of interest and breached a fiduciary duty and, therefore, was liable for legal malpractice, fraud, and constructive fraud. The complaint alleged B&T violated "fiduciary and ethical obligations" and breached a "fiduciary duty," which "misconduct also violated Rule 1.7 of the Indiana Rules of Professional Conduct." *Appellants' App. Vol. II* at 187-88, 191. The second amended complaint was based on "the same operative facts" as the initial complaint. *Hrg. Tr. Vol. II* at 47, 64, 74. B&T moved to dismiss this second complaint, and the trial court granted the dismissal.

[20] As to the legal malpractice allegation, Peoplelink claimed that B&T was (1) "obligated to exercise the degree of knowledge, skill, and competence ordinarily possessed by members of the legal profession, including with respect to the exercise of [its] duties of loyalty and independent judgment," (2) and by failing to disclose the conflict of interest regarding Wilkerson's negotiations with JIT, and by continuing to represent Wilkinson in such efforts, B&T fell short of those obligations and, thus, breached its fiduciary duty of loyalty to Peoplelink. *Appellants' App. Vol. II* at 187-88. Peoplelink claimed this failure by B&T caused Peoplelink to continue its attorney-client relationship with B&T, when Peoplelink would have otherwise terminated the relationship and to continue to pay for the services of a conflicted and disloyal lawyer. As such, Peoplelink contends it should have been entitled to disgorgement of all fees it paid to B&T

during B&T's representation of Wilkinson in his efforts to acquire JIT. *Id*. at 188.

[21] To prove a legal malpractice claim, the plaintiff-client must show: (1) employment of the attorney (the duty); (2) failure of the attorney to exercise ordinary skill and knowledge (the breach); (3) proximate cause (causation); and (4) loss to the plaintiff (damages). *Beal v. Blinn*, 9 N.E.3d 694, 700 (Ind. Ct. App. 2014), *trans. denied*. To establish causation and the extent of harm in a legal malpractice case, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence. *Id*.

[22] Indiana's notice pleading provision requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Indiana Trial Rule 8(A). The plaintiff need not set out in precise detail the facts upon which the claim is based, but he must plead the operative facts necessary to set forth an actionable claim. *Bd. of Comm'rs of Union Cnty. v. McGuinness*, 80 N.E.3d 164, 167 (Ind. 2017) (citing *Trail v. Boys & Girls Club of Nw. Ind.*, 845 N.E.2d 130, 135 (Ind. 2006)). To establish legal malpractice, a plaintiff is required to allege both proximate cause and actual damages. In its second amended complaint, Peoplelink did not make any claim that B&T's alleged malpractice, which was based on a conflict of interest, caused Peoplelink to suffer any actual damages. *See Appellants' App. Vol. II* at 187-89. Instead, Peoplelink's legal malpractice claim sought the disgorgement of attorney fees paid to B&T while B&T was representing Wilkinson in his efforts to acquire JIT. *Id*. at 188-89. "Disgorging an agent of all compensation received during a period of employment in which

the agent was also breaching a fiduciary duty to the principal, without a requirement for the principal to demonstrate financial loss, is an equitable, not legal remedy." *Wenzel v. Hopper & Galliher, P.C.*, 830 N.E.2d 996, 1001 (Ind. Ct. App. 2005). Peoplelink did not allege any actual damages resulting from B&T's alleged malpractice.[4] The trial court properly granted dismissal as to Peoplelink's claim of legal malpractice.

[23] As to the claim of actual fraud, Peoplelink alleged that, "Trybula and B&T concealed or failed to disclose one or more material facts within their knowledge by failing to inform Peoplelink about: (a) Wilkinson's efforts to acquire [JIT], and (b) Trybula and B&T's representation of Wilkinson in connection with Wilkinson's efforts to acquire [JIT]." *Appellants' App. Vol. II* at 189. "The elements of actual fraud are: (i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 (Ind. Ct. App. 2015) (citing *Rice v. Strunk,* 670 N.E.2d 1280, 1289 (Ind. 1996)), *trans. denied.* Fraud is not limited only to affirmative representations; the failure to disclose all material facts can

---

[4] Peoplelink also requested punitive damages in its second amended complaint. However, "Indiana courts have long held that punitive damages are not freestanding and that an award of actual damages is a prerequisite to an award of punitive damages." *Best Formed Plastics, LLC v. Shoun*, 51 N.E.3d 345, 355 (Ind. Ct. App. 2016). Accordingly, "punitive damages may not be awarded exclusively and must be 'in addition to' actual damages." *Id.* Therefore, because Peoplelink's second amended complaint did not request actual damages, the request for punitive damages fails.

also constitute actionable fraud. *Lawson v. Hale*, 902 N.E.2d 267, 275 (Ind. Ct. App. 2009). However, under the Rules of Professional Conduct, "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent. . . ." Prof. Cond. R. 1.6(a). The information that Peoplelink asserts should have been disclosed by B&T was obtained by B&T as part of its representation of Wilkinson, and therefore, B&T had no duty to disclose, and in fact, was prohibited by the Rules of Professional Conduct from disclosing, this information related to its representation of Wilkinson. The trial court properly dismissed Peoplelink's claim of fraud in its second amended complaint.

[24] As to constructive fraud, Peoplelink alleged that "Trybula and B&T concealed or failed to disclose one or more material facts within their knowledge by failing to inform Peoplelink about: (a) Wilkinson's efforts to acquire [JIT]; and (b) Trybula and B&T['s] representation of Wilkinson in connection with Wilkinson's efforts to acquire [JIT][,]" and that Trybula and B&T had a duty to disclose these material facts to Peoplelink as a result of [their] fiduciary relationship with Peoplelink." *Appellants' App. Vol. II* at 191. Peoplelink's constructive fraud claim was pled "in the alternative" to the actual fraud claim and was based on the same alleged "duty to disclose." *Id.* As previously discussed in reference to actual fraud, B&T had no duty to disclose information learned through its representation of Wilkinson, and was actually prohibited under the Rules of Professional Conduct from disclosing such information that had been gleaned from the representation of a client. *See* Prof. Cond. R. 1.6(a).

The trial court properly dismissed Peoplelink's claim of constructive fraud in its second amended complaint.

[25] Based on this, we conclude that the trial court did not err in granting B&T's motion to dismiss Peoplelink's second amended complaint. We, therefore, affirm the trial court's dismissal of both the initial complaint and the second amended complaint.

[26] Affirmed.

Najam, J., and Brown, J., concur.